**UNITED STATES of America**

v.

**Daniel BROWN, Appellant.**

**No. 08–1221.**

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 2009.

Filed: Aug. 26, 2009.

Aug. 26, 2009.

James V. Wade, Esq., Ronald A. Krauss, Esq., [Argued], Office of the Federal Public Defender, Harrisburg, PA, for Appellant, Daniel Brown.

Martin C. Carlson, Esq., Francis P. Sempa, Esq., [Argued], Office of the United States Attorney, Scranton, PA, for Appellee United States of America.

Before SLOVITER and BARRY, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

POLLAK, District Judge.

Daniel Brown pled guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). He was sentenced to 180 months of incarceration. Because it is unclear whether the District Court sentence was the result of an upward departure authorized by the United States Sentencing Guidelines or a variance from those guidelines pursuant to 18 U.S.C. § 3553, we will remand to the District Court for resentencing.[1]

### I.

FBI agents recovered images of child pornography from Brown's home. After Brown entered his guilty plea, the Probation Office prepared a Pre–Sentence Report ("PSR"). Applying the 2007 edition of the advisory Sentencing Guidelines, the PSR calculated Brown's offense level to be 30 and his corresponding sentencing range to be between 97 and 121 months of incarceration. Neither party objected to this calculation of the guidelines sentence.

When calculating that the total offense level under the guidelines—apart from any potential departure or variance—was 30, the PSR applied the following reductions and enhancements to defendant's base offense level of 22: (1) a two-level reduction pursuant to § 2G2.2(b)(1) because the evidence did not establish an intent to traffic or distribute the illicit images; (2) a two-level enhancement pursuant to § 2G2.2(b)(2) because some of the images

involved a prepubescent minor or a minor under the age of 12 years; (3) a four-level enhancement pursuant to § 2G2.2(b)(4) because some of the images portrayed sadistic or masochistic conduct; (4) a two-level enhancement pursuant to § 2G2.2(b)(6) because a computer was used for the receipt and possession of the images; (5) a five-level enhancement pursuant to § 2G2.2(b)(7)(D) because the offense involved 600 or more images; (6) a two-level reduction for acceptance of responsibility pursuant to § 3E1.1(a); and (7) a one-level reduction for timely notifying the government of the intention to plead guilty pursuant to § 3 E 1.1(b). Starting from the base offense level of 22, these reductions and enhancements yielded the agreed total offense level of 30.

### A.

The five-level enhancement for possession of 600 or more images is at the core of this appeal. U.S.S.G. § 2G2.2(b)(7) (also referred to as "subsection (b)(7)" or "(b)(7)") provides that a defendant convicted of possessing child pornography is subject to the following schedule of potential sentencing enhancements under the guidelines:

If the offense involved—

(A) at least 10 images, but fewer than 150, increase by 2 levels;

(B) at least 150 images, but fewer than 300, increase by 3 levels;

(C) at least 300 images, but fewer than 600, increase by 4 levels; and

(D) 600 or more images, increase by 5 levels.

Application Note 4 to subsection (b)(7) gives instruction as to how a court is to count images.[2] (As discussed *infra* in Sec-

---

* Hon. Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

2. U.S.S.G. § 2G2.2 Application Note 4 provides:

(A) Definition of "Images".—"Images" means any visual depiction, as defined in 18 U.S.C. § 2256(5), that constitutes child pornography, as defined in 18 U.S.C. § 2256(8).

tion IV of this opinion, the counting procedure set forth in Application Note 4 has no function other than as an adjunct to (b)(7).) Pursuant to Application Note 4, a still photograph counts as one image (unless that "substantially underrepresents the number of minors depicted," in which case "an upward departure may be warranted"). Further, also pursuant to Application Note 4, a video counts as 75 images (but if "the length of the recording is substantially more than five minutes, an upward departure may be warranted").

Brown's PSR recited that Brown had 6350 still photographs and 221 videos depicting children engaging in sexually explicit conduct. Manifestly, the still photographs alone put Brown well over the 600 images which, pursuant to (b)(7)(D), called for a five-level enhancement.[3]

### B.

In a section entitled "Factors That May Warrant Departure," the PSR stated that, pursuant to Application Note 4, an "upward departure may be warranted if the Court determines that the number of images substantially underrepresents the number of minors depicted" or "if the Court determines that the length of a video-clip, movie, or similar recording is substantially more than five minutes." (PSR ¶¶ 79–80.) Brown possessed at least 28 digital movies or videos that were substantially longer than five minutes.

After Brown entered his guilty plea but before Brown's sentencing hearing, the government filed a "Memorandum Recommending Upward Variance" with the District Court. At the sentencing hearing, the government's attorney began his presentation by telling the court that the government was "seeking an upward variance from the sentencing guidelines." (App.48.) Later, the government's attorney informed the court that this was "the first time [he had] ever asked a Court to depart upward—to do an upward variance." (App.58.) Shortly thereafter, he noted that he was "asking for an increase, upward variance, in the sentencing guidelines." (*Id.*) He also emphasized that he "needed to get approval from [his] boss[ ] before [he] can ask the Court to depart from the sentencing guidelines" and that, in this case, "the sentencing guidelines have—have given to the Court the discretion and asked the Court—invited the Court to use its judgment." (App.61.) After asking "the Court to increase the—the applicable sentencing guidelines range five levels to a range of 168–210 months" because that increase would "adequately reflect the factors in 3553 A[,]" the government's attorney concluded by requesting that the court grant "the government's motion for an upward variance." (*Id.*)

Brown submitted a sentencing memorandum to the District Court urging a downward variance from the guidelines.

---

(B) Determining the Number of Images.— For purposes of determining the number of images under subsection (b)(7):

(I) Each photograph, picture, computer or computer-generated image, or any similar visual depiction shall be considered to be one image. If the number of images substantially underrepresents the number of minors depicted, an upward departure may be warranted.

(ii) Each video, video-clip, movie, or similar recording shall be considered to have 75 images. If the length of the recording

is substantially more than 5 minutes, an upward departure may be warranted.

3. The PSR counted up the aggregate number of images (6350 + (75 × 221)) as 23,150. This court calculates the aggregate number as 22,925. The modest discrepancy is presumably owing to some minor arithmetic or clerical error. Which figure correctly reflects the total number of images is, however, of no consequence, since each figure exceeds by so large a margin the "600 or more images" that (b)(7)(D) equates with a five-level enhancement.

At the sentencing hearing, Brown's counsel emphasized that defendant's age, poor health, lack of criminal history, expressed remorse, and family support suggested that recidivism was unlikely and that long-term imprisonment was unnecessary.

At the sentencing hearing, the District Court observed at the outset that a brief had been "filed by the government seeking an enhancement under the appropriate provisions of the sentencing guidelines." (App.48.) The court later referred to the guidelines again, noting the applicability of U.S.S.G. § 2G2.2 Application Note 4:

> And as the government has pointed out, and as the probation officer brought to our attention, we have Section 2–G 2.2 of the guidelines which has an application note which says that an upward departure may be warranted if the Court determines the number of images substantially under represents the number of minors depicted.

> There's a gross number here. The guideline alludes to 600. And the same application note—or different application note, 4B.2, provides that it's appropriate for an upward departure if the Court determines that the length of any video, video clip movie is substantially more than five minutes. If I remember

correctly, at least one of these ran 24 minutes.

(App.63.)

The District Court also discussed its consideration of the factors bearing on sentencing set forth at 18 U.S.C. § 3553(a).[4] Specifically, the court noted that "the public needs to be protected" from those who, like Brown, "perpetuate an industry" of child pornography, and that the child pornography possessed by Brown represented "sadistic behavior in excess of anything" the court had ever seen in similar cases. (App.63–64.) Then, after having announced that the defendant would be sentenced to 180 months of imprisonment, the court stated, "I think this sentence satisfies the purposes set forth in Section 3553A." (App.66.)

After the District Court announced the sentence, defense counsel asked the judge "for clarification" on whether the court had "formally rule[d] on the motion for an upward departure and if so, how many levels?" (App.66–67.) The following colloquy between the court, defense counsel, and the Probation Officer ensued:

> THE COURT: Well, it's gone from—I don't have that immediately before me. Would you it give [sic] to him, please?

> PROBATION OFFICER: Your Honor, when we applied the guideline, the

---

**4.** The factors set forth in 18 U.S.C. § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [that] is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

advisory range was 97 to 121 based on a total offense level of 30 with a criminal history category one. The government's motion argued for a five-level increase which would take it to a 35 total offense level and a criminal history, again, category one with a range of 168 months to 210.

 MR. LATELLA: I'm sorry, 168 to—

 THE COURT: 168 to 210.

 MR. LATELLA: So the Court granted a five-level upward departure; is that correct?

 THE COURT: Yes, I granted the government's motion.

 MR. LATELLA: What's the range?

 THE COURT: 168 to 210 is the new range under the guidelines, and I imposed a sentence of 180 months.

 MR. LATELLA: Thank You.

(App.67.)

## II.

The Sentencing Guidelines "are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States,* 552 U.S. 38, ——, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). In reviewing a criminal sentence, an appellate court should:

> first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court

should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Id.* at 597.

In this Circuit, district courts should engage in the following three-step process when determining an appropriate sentence:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker.*[5]
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors ... in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Lofink,* 564 F.3d 232, 237–38 (3d Cir.2009) (citing *United States v. Gunter,* 462 F.3d 237, 247 (3d Cir.2006)) (internal quotation marks and citations omitted).

## III.

 We expressly distinguish between departures from the guidelines and variances from the guidelines. *See United States v. Vampire Nation,* 451 F.3d 189, 195 n. 2 (3d Cir.2006). Departures are enhancements of, or subtractions from, a guidelines calculation "based on a specific Guidelines departure provision." *Id.* These require a motion by the requesting party and an express ruling by the court.

---

**5.** *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the Supreme Court first held that the

guidelines were advisory rather than mandatory.

*Id.* at 197–98. Variances, in contrast, are discretionary changes to a guidelines sentencing range based on a judge's review of all the § 3553(a) factors and do not require advance notice. *Id.* at 195–98. "[D]istrict courts should be careful to articulate whether a sentence is a departure or a variance from an advisory Guidelines range." *Id.* at 198.

Whether a district court has imposed a departure or, instead, a variance has real consequences for an appellate court's review. *See, e.g., Irizarry v. United States,* ⸺ U.S. ⸺, 128 S.Ct. 2198, 2202, 171 L.Ed.2d 28 (2008) (holding that the notice requirement of Fed.R.Crim.P. 32(h) applies to departures but not to variances). An appellate court reviewing a variance for reasonableness does so by evaluating the district court's analysis of the § 3553(a) factors, whereas an appellate court reviewing a departure must consult the relevant guidelines provision in order to determine whether the departure was appropriate. Accordingly, when a sentencing court engages in either a departure or a variance from the guidelines, it is imperative that the judge make clear which of these is being applied.

█ In the instant matter, we are unable to determine whether the District Court intended to grant an upward departure or intended to grant a variance. The court expressly addressed the § 3553(a) factors when discussing the sentence and concluded that the sentence satisfied the purposes of § 3553; in this respect, the sentence seems to represent a variance. On the other hand, the court also appears to have taken U.S.S.G. § 2G2.2 Application Note 4 into consideration, which would indicate a departure.

When asked by defense counsel, "So the Court granted a five-level upward departure; is that correct?" the Judge replied, "Yes, I granted the government's motion." The government's motion had "urge[d] the court to impose an upward variance from the sentencing guidelines," and the government had used the term "variance" rather than "departure" fairly consistently throughout the sentencing hearing.[6] Thus, the court's answer to defense counsel's question simultaneously suggests two not readily reconcilable positions: (1) that the court intended to grant an upward departure, as indicated by its responding "yes" to defense counsel's inquiry whether the court had "granted a five-level upward departure," and (2) that the court intended to grant a variance, as indicated by its reference to "the government's motion," which was captioned "Memorandum Recommending Upward Variance." The court's reply leaves us unable to determine whether the court intended to grant an upward departure or a variance. In sum, the court did not "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall,* 128 S.Ct. at 597. *See also Gunter,* 462 F.3d at 247.

### IV.

█ Where, as here, a sentencing court has made a non-constitutional error, "we will remand for resentencing 'unless [we] conclude on the record as a whole … that the error did not affect the district court's selection of the sentence imposed.'" *United States v. Langford,* 516 F.3d 205, 215

---

6. But it is also the case that the government's sentencing memorandum was itself not entirely clear about the distinction between a departure and a variance. Although the memorandum relied on the § 3553(a) factors, the memorandum also noted that "Application Notes 4(B)(i) and (ii) to U.S.S.G. § 2G2.2 suggest that the number of images of child pornography and the length of videos/movies of child pornography are areas where courts are warranted in making upward variances or departures from the sentencing guidelines range."

(3d Cir.2008) (citing *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)). Because the District Court explicitly discussed both U.S.S.G. § 2G2.2 Application Note 4 *and* the § 3553(a) factors when explaining its sentence, we cannot conclude with any certainty that its failure to distinguish between a departure and a variance did not affect the selection of the sentence imposed. Had the court considered the § 3553(a) factors in isolation from (rather than conflation with) the Application Note, it is entirely possible that the court would not have viewed the § 3553(a) factors as independently able to provide sufficient support for imposing a sentence within a range five levels higher than the range the parties agreed had been properly calculated by the PSR.

Moreover, U.S.S.G. § 2G2.2 Application Note 4, to which the District Court referred, could not have grounded an upward guidelines departure under any circumstances. " 'When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further.' " *United States v. Ashley*, 342 F.3d 850, 852 (8th Cir.2003) (quoting *United States v. Andreas*, 216 F.3d 645, 676 (7th Cir.2000)). The language in Application Note 4 referring to an "upward departure" comes from Section "B" of the Application Note, which is entitled "Determining the Number of Images" and which applies "[f]or purposes of determining the number of images under subsection (b)(7)." Contrary to the view expressed by the government and the court, the plain meaning of the Application Note is that an upward departure *in the number of images used to apply the sentencing enhancement at U.S.S.G. § 2G2.2(b)(7)*—not an upward departure from the guidelines as a whole—may be warranted when those images cannot properly be tabulated by the counting procedures enumerated in the body of § 2G2.2(b)(7).[7] Had the Sentencing Commission wished to provide for an upward departure *from the guidelines* based on the number of images or the length of videos, it easily could have done so in U.S.S.G. § 2G2.2 Application Note 6, entitled "Upward Departure Provision." [8]

---

**7.** The following two hypothetical situations may help to clarify the intended meaning of the Application Note. First, we may consider a case in which a single pornographic photograph involves four minors: Application Note 4(B)(i) might encourage a judge to count the single photograph as four images, rather than as just one, for the purposes of determining the number of images under subsection (b)(7), because, in such a case, the number of images (one) underrepresents the number of minors depicted (four). Second, we may consider a case (e.g. the instant matter) in which a defendant possesses a video of substantially more than 5 minutes: Application Note 4(B)(ii) might encourage a judge to count the video as more than 75 images because, in such a case, the number of images (75) underrepresents the severity of the video when compared to a shorter video (e.g. a thirty-second video) that also otherwise counts as 75 images for the purposes of determining the number of images under subsection (b)(7).

**8.** That application note provides:

Upward Departure Provision.—If the defendant engaged in the sexual abuse or exploitation of a minor at any time (whether or not such abuse or exploitation occurred during the course of the offense or resulted in a conviction for such conduct) and subsection (b)(5) does not apply, an upward departure may be warranted. In addition, an upward departure may be warranted if the defendant received an enhancement under subsection (b)(5) but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved. U.S.S.G. § 2G2.2 Application Note 6. Unlike Application Note 4, which deals with the way in which a sentencing court should apply a sentencing enhancement from the body of § 2G2.2 (namely the enhancement from Subsection (b)(7)), Application Note 6's plain language speaks to an upward departure *beyond* that already available pursuant to the body of § 2G2.2 (namely the enhancement from Subsection (b)(5)).

Because the Commission did not do so, and because the plain meaning of Application Note 4 refers to a procedure for counting images under the guidelines in order to "calculate a defendant's Guidelines sentence," *Gunter*, 462 F.3d at 247, rather than a procedure for departing from the guidelines, Application Note 4 could not have justified the court's sentence in this case.[9]

The District Court did also justify its sentence by reference to the § 3553(a) factors. Thus, had the court clearly specified that Brown's sentence was the result of a variance, perhaps any misinterpretation of the Application Note would have constituted harmless error.[10] However, in view of the possibility that the court intended to formulate a departure, rather than a variance, from the guidelines, and given the court's invocation of its erroneous interpretation of U.S.S.G. § 2G2.2 Application Note 4, we cannot be confident that the court would have arrived at the same conclusion had it properly construed the Application Note.

## V.

For the reasons given, we will VACATE the judgment of the District Court and REMAND for resentencing.

---

9. It is true that, as a general matter, use of the term "upward departure" in the guidelines "means departure that effects a sentence greater than a sentence that could be imposed under the applicable guideline range or a sentence that is otherwise greater than the guideline sentence." U.S.S.G. § 1B1.1 Application Note 1(E) (defining terms "that are used frequently in the guidelines and are of general applicability"). In this case, however, the plain meaning of that term, taken in context, is different. *See* U.S.S.C. § 2G2.2 Application Note 4(B) ("For purposes of determining *the number* of images under subsection (b)(7) . . . [i]f the length of recording is substantially more than 5 minutes, an upward departure may be warranted") (emphasis added).

10. In that event, we would have proceeded to analyze the variance for reasonableness. We would also observe, but without a conclusive ruling, that we have certain reservations about whether the District Court adequately addressed Brown's argument that his personal history and characteristics—his age, poor health, lack of criminal history, strong family support, and admission of guilt—make his likelihood of recidivism minimal. *See United States v. Levinson*, 543 F.3d 190, 196 (3d Cir.2008) ("In each case . . . *we must have an explanation* from the [D]istrict [C]ourt sufficient for us to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)") (emphasis added).