NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-2404

———

UNITED STATES OF AMERICA

v.

WILLIAM ADAMS,
                                        Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-08-cr-00242)
District Judge: Hon. Christopher C. Conner

———

Submitted Under Third Circuit LAR 34.1(a)
February 11, 2010

Before: SLOVITER, ROTH, and TASHIMA,[*] Circuit Judges

(Filed : June 25, 2010)

———

OPINION

———

_____

   [*] Hon. A. Wallace Tashima, Senior Judge, United States
Court of Appeals for the Ninth Circuit, sitting by designation.

TASHIMA, <u>Circuit Judge</u>.

William Adams appeals his sentence of 120 months' imprisonment for violation of 18 U.S.C. § 876(b), involving the mailing of extortionate threats. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we will affirm.

**I.**

In 1973, Adams was convicted for assault with the intent to ravish and sodomy, for which he served the maximum term of five years. In 1978, only six days after his release, Adams attacked and raped a second victim. Adams was again convicted, and at the subsequent sentencing proceeding, Adams attempted to assault his attorney, Robert Tarman.

The court sentenced Adams to fifteen to thirty years imprisonment. Although Adams was eligible for parole after fifteen years, parole officials consistently denied him parole, citing in at least some decision notes his potential danger to others. In 2008, two months before his mandatory release date, Adams mailed a letter to Tarman. The letter read as follows:

> Hi, Bob. I don't think you remember me, but I remember you. I am the guy who punch you in the face back in 1979 in the courtroom. . . . You did such a good job that I got 15-30 years. Just like you told me in the county jail you are not paying me, but now it's payback time and you are going to get paid.
> I am getting out of prison on 7-12-08 and I will not be on parole or probation or have any kind of supervision, so there won't be anything to stop me. You can imagine how bitter I am or how much anger I have for you. What do you think I'm going to do?

The letter went on to demand $30,000, stating: "First you will mail me a five thousand dollar two hundred dollars check, and then I will stay away from you and your <u>family</u> for a hold one year." Adams then provided his full name, inmate number, and address.

Adams also mailed letters to William Shreve, another attorney who had represented him, and two apparent strangers from a list of individuals who had volunteered in the past to assist inmates with legal matters. Each of these three letters referenced Adams' history of sexual violence, using language such as: "You know, in the past I have been very nasty man and done some bad things to other people," and "I am moving out your way because the state has classified me as a violent sexual predator that because I stalk my victim." Each letter then demanded $650 from the recipient in order for Adams to stay away from the recipient and the recipient's family.

A two-count indictment was filed on June 11, 2008. Adams pleaded guilty to Count One of the Indictment, involving the letter to Tarman. In a written plea agreement, the United States agreed to dismiss Count Two of the Indictment, which was based on the letter to Shreve.

At the sentencing hearing on April 29, 2009, the District Court heard testimony regarding Adams' conduct during his incarceration. Dr. David Scott Sacks, a psychologist who had worked with Adams from 1995 until 2006, testified that Adams was placed in a restricted housing unit because he posed a grave risk to other inmates and staff in the general prison population. Sacks noted that Adams' problems while in prison

3

included "assaultive behavior, [] threatening behavior, as well as his sexually assaultive and pressuring behavior of other inmates." Sacks also stated that because Adams uses calculated violence as a way of getting his needs met, the probability of him engaging in future assaultive behavior or threats of assaultive behavior is very high. Furthermore, Sacks found troublesome that Adams fantasized and masturbated to images of violence and degradation of women and that he continued to act out and resist treatment even after twenty-four years of receiving treatment. At the government's request, Sacks used an objective tool, the Static-99, to predict the danger of future recidivism by Adams. Using the Static-99, Sacks predicted that Adams presented a 33 percent chance of sexual reoffending within five years, a 52 percent chance after ten years, and a 57 percent chance after fifteen years. Sacks posited that the Static-99 actually understated the danger that Adams would reoffend based on his individual knowledge of Adams. In response, Adams' expert, Dr. John Mitchell Hume, testified that prison records indicated that Adams had a mental disorder, but that this disorder could be treated leading to "substantial improvement."

The base offense level for Adams' violation of 18 U.S.C. § 876 was 18. Adams' guideline imprisonment range was 33 to 41 months. The court departed upward under U.S.S.G. § 4A1.3(a) on the ground that Adams' criminal history category of 3 substantially underrepresented the seriousness of his criminal history or the likelihood of recidivism. The court considered that Adams had received no criminal history points for

4

his 1973 intent to ravish and sodomy conviction or a prior 1969 conviction for malicious mischief. The court also found that Adams' likelihood of recidivism and pattern of deviate conduct "most closely resemble[d] defendants in categories 5 or 6." The court gave Adams the benefit of the doubt in departing upward to category 5, bringing Adams' guideline range to 51 to 63 months' imprisonment. In addition, the District Court departed upward under U.S.S.G. § 2B3.2 because Adams' offense included a threat to Tarman's family members. This departure brought Adams' guideline range to 63 to 78 months' imprisonment.

After imposing the two upward departures, the court lastly considered whether an upward variance was also warranted. In doing so, the district court considered the nature and circumstances of Adams' initial offense in 1978 as well as of the extortionate letters. The court also considered the history and characteristics of the defendant, and the need to protect the public. The court found that, in light of Adams' continuing dangerousness and likelihood of reoffending, an upward variance was necessary to protect the public. However, the court disagreed with the government's position that Adams should be sentenced as a career offender to 151 to 188 months. The court considered as mitigating factors Adams' age and Dr. Hume's testimony that Adams could improve with adequate mental health treatment. The court then sentenced Adams to 120 months' imprisonment followed by three years of supervised release.

Adams filed this timely appeal, arguing that his sentence was unreasonable under

5

18 U.S.C. § 3553(a).

**II.**

Because the sentencing error alleged by Adams was raised below, we review the District Court's sentence for abuse of discretion. *United States v. Russell*, 564 F.3d 200, 203 (3d Cir. 2009). The District Court abuses its discretion if it committed a significant procedural error or if we determine that the sentence was substantively unreasonable. *Id.*

Adams contends that the District Court abused its discretion by imposing an unreasonable sentence. He bases this claim on the upward departure under U.S.S.G. § 4A1.3, the upward departure under U.S.S.G. § 2B3.2, and the upward variance. We conclude that the sentence was reasonable.

First, the upward departure pursuant to U.S.S.G. § 4A1.3 was reasonable. In departing upward, the court considered Adams' 1973 conviction for assault with the intent to ravish and sodomy and a prior conviction for malicious mischief, as well as Adams' "pattern of deviate conduct[] and his likelihood of recidivism." Adams argues that because his prior convictions were specifically excluded from the criminal history category calculations under § 4A1.2(e) due to their age, those convictions were already accounted for, and an upward departure based on those convictions was unwarranted. However, application note 8 to § 4A1.2 states that the court may upwardly depart under § 4A1.3 if it "finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct." Further, the ultimate standard set forth for

6

upward departures under § 4A1.3 is whether "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). As the court noted, Adams' prior convictions demonstrated a pattern of violent behavior and indicated the possibility that Adams could commit new acts of violence immediately upon release from incarceration. The District Court found, in accordance with U.S.S.G. § 4A1.3(a)(4)(A), that Adams's criminal history and likelihood of recidivism most closely resembled defendants in categories 5 or 6. Giving Adams the benefit of the doubt, the court departed upward only to category 5. This departure was substantively reasonable.

Second, the upward departure pursuant to U.S.S.G. § 2B3.2 application note 8 was reasonable. Application note 8 states: "If the offense involved . . . a threat to a family member of the victim, an upward departure may be warranted." U.S.S.G. § 2B3.2 application note 8. In his letter to Tarman, Adams demanded $30,000 in order to refrain from harming Tarman and his family, and he emphasized this threat by underlining the word "family." Adams argues that the threat to Tarman's family should not be considered under application note 8 because no evidence suggests that Tarman's family was ever aware of the threat. However, application note 8 does not require an awareness of the threat by the victim's family. The fact that a threat is made against a family member of the victim may be, by itself, an aggravating circumstance of the crime. *See United States v. Cuddy*, 147 F.3d 1111, 1116 (9th Cir. 1998). The District Court's

finding of a two-level upward departure on account of the threat to Tarman's family was reasonable.

Third, the upward variance was reasonable. "Variances . . . are discretionary changes to a guidelines sentencing range based on a judge's review of all the § 3553(a) factors . . . ." *United States v. Brown*, 578 F.3d 221, 226 (3d Cir. 2009). So long as the sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). The District Court considered the nature and circumstances of Adams' offense, his history and characteristics, the kinds of sentences available, and the possibility of sentencing disparities. It found especially probative evidence of Adams' dangerousness and likelihood of reoffending, but balanced those considerations against Adams' age and expert testimony that Adams could improve with adequate mental health treatment.

After reviewing the record, we conclude that the District Court appropriately considered the § 3553(a) factors and that the overall sentence was reasonable.

**V.**

For the reasons set forth, we will affirm the judgment of the District Court.