**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-2361
_____

UNITED STATES OF AMERICA

v.

JUSTIN THOMPSON,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-11-cr-00198-003)
District Judge:  Honorable Sylvia H. Rambo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2013

_____


Before:  McKEE, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

(Filed: January 17, 2014)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Justin Thompson appeals the 110-month sentence he received after pleading guilty to conspiracy to distribute and possess with intent to distribute cocaine hydrochloride. For the following reasons, we will affirm the judgment of sentence.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. On April 16, 2012, Thompson pleaded guilty to a superseding information that charged him with conspiracy to distribute and possess with intent to distribute an unspecified amount of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The parties agreed that Thompson was responsible for 300 to 400 grams of powder cocaine, and the Probation Office's Presentence Investigation Report ("PSR") accordingly assigned him a base offense level of 22. PSR ¶ 17; see United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c)(9). However, because Thompson had two prior controlled substance convictions, he was classified as a career offender under U.S.S.G. § 4B1.1(a). PSR ¶ 23. This enhancement increased his offense level from 22 to 32 and his criminal history category from III to VI, yielding an advisory Sentencing Guidelines range of 210 to 262 months of imprisonment. PSR ¶¶ 33, 54. The range was reduced to 210 to 240 months pursuant to the 20-year statutory maximum. PSR ¶ 54; see U.S.S.G. § 5G1.1(c). The PSR did not award a downward adjustment for acceptance of responsibility, on the basis that Thompson had incurred new criminal charges while under pretrial supervision.

2

Thompson filed a sentencing memorandum in which he argued that he was entitled to a downward adjustment for acceptance of responsibility; moved for a downward departure based on his poor physical health (Thompson suffers from end-stage renal disease); and requested a downward variance from the career offender Guideline, on the grounds that any sentence within that range would "be significantly greater than necessary to address [his] conduct." Appendix ("App.") 24. Thompson also cited his physical condition and the need to avoid unwarranted sentencing disparities as factors to be considered under 18 U.S.C. § 3553(a). He requested a below-Guidelines sentence of 30 months.

At Thompson's sentencing hearing, which was conducted on May 2, 2013, the Government indicated that it would not object to an adjustment for acceptance of responsibility (reducing Thompson's final offense level from 32 to 29). Apparently misconstruing Thompson's request for a variance from the career offender Guideline as a motion for downward departure,[1] the Government further indicated that it would not object to a one-level decrease in Thompson's criminal history category pursuant to U.S.S.G. § 4A1.3(b).[2] Thus, under the Government's calculation, the correct advisory Guidelines range was 140 to 175 months (based on an offense level of 29 and a criminal

---

[1] Specifically, the Government stated: "[t]he Court, if it were to vary because it overstates it, you could only drop one criminal history category. So he would go from a six to a five. I don't oppose that." Appendix ("App.") 58.

[2] Under § 4A1.3(b)(1), a downward departure "may be warranted" if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." However, pursuant to U.S.S.G. § 4A1.3(b)(3), a downward departure for career offenders may not exceed one criminal history category.

3

history category of V).  The Government characterized Thompson's remaining § 3553(a) arguments as "very compelling," App. 59, but stated that it would "defer to" the court's determination of an appropriate sentence.

After hearing from both parties, the District Court stated that it would grant Thompson's unopposed request for a downward adjustment based on acceptance of responsibility.  It further announced, "[w]ith regard to the health issues," that it "intend[ed]" to "grant a departure both on health but also on sentencing disparity."  App. 60.  The court then sentenced Thompson to 110 months of imprisonment, three years of supervised release, and a $100 special assessment.  App. 61-62.  The court gave the following statement of reasons:

> The Court adopts the pre-sentence investigation report with the following changes:  The Court does grant him three points for acceptance of responsibility.  No count of conviction carries a mandatory minimum sentence.  The fine is waived because of the Defendant's inability to pay.
> The sentence varies from the [G]uideline range for the following reasons:  One, the Court has taken into account his renal failure, his overall health condition, the disparity in the sentencing between him and other Defendants as well as disparity from his previous sentence under his prior criminal history.

App. 62-63 (emphases added).  The Government then reminded the court that it had not addressed whether Thompson's criminal history category should be reduced from VI to V.  The District Court responded:

> Yes.  The Court also believes consideration should be given to a variance based on the career offender status as it overstates the criminal history and the likelihood that the Defendant will commit future crimes.  Two prior convictions were minor drug offenses and also the fact that his previous history compared to his present offenses are just so disparate that the Court feels that to give even the sentence under the amended history still over-represents the penalty that he deserves in this case.

4

App. 66 (emphasis added). In its written statement of reasons, the District Court indicated that the applicable Guideline range was 151 to 188 months, based on an offense level of 29 and a criminal history category of VI. The court explained that a variance was warranted in light of Thompson's low likelihood of recidivism. Thompson timely appealed.

II.[3]

We review the procedural and substantive reasonableness of a district court's sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). We "take up the procedural review first, looking to see that the district court has committed no significant error." United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008). "If the sentencing decision passes that first stage of review, we then, at stage two, consider its substantive reasonableness." Id.

At stage one, we "ensur[e] that the district court committed no significant procedural error." United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (emphasis added) (quotation marks omitted). In United States v. Gunter, 462 F.3d 237 (3d Cir. 2006), this Court articulated that a sentencing court must: (1) calculate the defendant's Guidelines sentence "precisely" as it would have before Booker; (2) in doing so, formally rule on the motions of both parties and state on the record whether it is granting a departure and how that departure affects the Guidelines calculation (taking into account

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

5

this Court's pre-Booker caselaw); and (3) exercise discretion by separately considering the relevant § 3553(a) factors. Id. at 247.

If the sentence imposed is not procedurally unreasonable, we proceed to the substantive-reasonableness inquiry, which asks "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." United States v. Doe, 617 F.3d 766, 770 (3d Cir. 2010) (quotation marks omitted). We apply a deferential standard, affirming "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568.

## III.

### A.

Thompson's first claim of procedural error is that the District Court failed to state its calculation of the applicable Guidelines range on the record during his sentencing hearing. Thompson Br. 18. Contrary to Thompson's position, the District Court expressly adopted the PSR's Guidelines calculation — a total offense level of 32 and a criminal history category of VI — "with the following changes: The Court does grant [Thompson] three points for acceptance of responsibility." See App. 62-63. Because the court calculated and applied the correct career offender range, it complied with the first step of the Gunter analysis.

### B.

Thompson next argues that the District Court failed to "formally rule on" his request that it "disregard" the career offender Guideline. See Thompson Br. 18-19, 25.

6

Thompson emphasizes that, but for the court's application of the career offender range, his total offense level of 19 and criminal history category of III would have yielded a Guidelines range of 37 to 46 months of imprisonment. Thompson asks that we vacate his sentence and remand so that the sentencing court may "determine whether the compelling policy reasons warrant disregarding the [c]areer [o]ffender [G]uideline range in this case." Thompson Br. 25.

We note, as an initial matter, that there is some confusion as to whether Thompson's argument is within the framework of a motion for downward departure pursuant to U.S.S.G. § 4A1.3(b)(1) or a request for a downward variance. We "expressly distinguish between departures from the [G]uidelines and variances from the [G]uidelines." United States v. Brown, 578 F.3d 221, 225 (3d Cir. 2009). Departures are enhancements of, or subtractions from, a Guidelines calculation "based on a specific Guidelines departure provision," and they require a motion by the requesting party and an express ruling by the court. Id. (quotation marks omitted). Variances, by contrast, are "discretionary changes to a [G]uidelines sentencing range based on a judge's review of all the § 3553(a) factors" and do not require advance notice. Id. at 226. Whether a district court has imposed a departure or a variance "has real consequences for an appellate court's review": the former determination implicates step two of the Gunter analysis, whereas the latter affects step three. Id.; see United States v. Fumo, 655 F.3d 288, 308 (3d Cir. 2011).

As previously discussed, while Thompson's sentencing memorandum and statements at his sentencing hearing framed his argument as one for a variance, the

Government construed the argument as a motion for a departure under § 4A1.3. Compare App. 22-29, and App. 50-54, with App. 58. Thompson compounded the resulting uncertainty by arguing on appeal that the District Court did not "formally rule on" his request that it decline to apply the career offender Guideline. Thompson Br. 19, 25. Despite this semantic anomaly, Thompson's argument is clearly based on principles of fairness and policy — not on a particular Guidelines provision. We will accordingly consider his argument to be that the District Court erred at step three of the Gunter analysis by not granting his request for a variance pursuant to § 3553(a).[4]

To comply with its step three obligations, a sentencing court must "produce a record sufficient to demonstrate its rational and meaningful consideration of the [18 U.S.C.] § 3553(a) factors." United States v. Begin, 696 F.3d 405, 411 (3d Cir. 2012). "The record as a whole must make clear that the district judge has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Id. (quotation marks omitted). While the court need not "raise every conceivable issue on its own initiative," id., it must "acknowledge and respond to" any "properly presented sentencing argument which has colorable legal merit and a factual

_____

[4] Even assuming that Thompson moved for a downward departure under § 4A1.3(b)(1), we would still find no procedural error under Gunter's second step because the Government conceded at sentencing that the District Court could take Thompson's argument into account in its sentencing decision. App. 58-60; see United States v. Jackson, 467 F.3d 834, 839 (3d Cir. 2006) (observing that, while failure to rule on a Guidelines departure motion "would seem contrary to step two in Gunter," we "would not remand for re-sentencing when the Government's arguments to the district court concede[d] the plausibility of the downward departure" and thereby allowed the inference that the departure motion had been denied by the district court "in recognition of its ability to depart had it chosen to do so" (quotation marks omitted)).

basis," United States v. Ausburn, 502 F.3d 313, 329 (3d Cir. 2007); cf. Jackson, 467 F.3d at 842 ("Merely reciting the § 3553(a) factors, saying that counsel's arguments have been considered, and then declaring a sentence, are insufficient to withstand our reasonableness review."). "Where the record is inadequate, we do not fill in the gaps by searching the record for factors justifying the sentence." Ausburn, 502 F.3d at 331.

In his sentencing memorandum, and at his sentencing hearing, Thompson argued that the court was not "[b]ound" to accept the career offender range, and that it should not do so given the nature of his criminal history. See App. 22-28, 51-53. The record reflects that the District Court considered these arguments in its sentencing decision. For instance, after hearing both parties' arguments on Thompson's variance request, the District Court observed that "considering [Thompson's] past criminal history, the sentence that would ordinarily have been imposed would be, I calculate, 13 to 6 times a sentence previously imposed. I think that is an inordinate disparity." App. 60. In its oral statement of reasons, the court further explained that Thompson's 110-month sentence varied from the Guideline range due to, inter alia, "disparity from [Thompson's] previous sentence under his prior criminal history." App. 63. The court later reiterated that "consideration should be given to a variance based on the career offender status as it overstates the criminal history and the likelihood that [Thompson] will commit future crimes." App. 66. While Thompson may have preferred that the District Court ignore

the career offender Guideline in its entirety, this record satisfies us that the court did not abuse its discretion in declining do so.[5]

## C.

Thompson argues that his sentence is substantively unreasonable, because it is "significantly greater than any relevant benchmark." Thompson Br. 13, 28. A sentence is substantively reasonable if "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." Tomko, 562 F.3d at 568 (quotation marks omitted). In this case, the District Court considered and accepted Thompson's primary arguments that his criminal history overstated the seriousness of his offense, and that he posed a reduced risk of recidivism due in part to his poor physical health. Indeed, the District Court granted a significant downward variance based on these arguments. We cannot say that "no reasonable sentencing court would have imposed the same sentence on [Thompson] for the reasons the [D]istrict [C]ourt provided." Tomko, 562 F.3d at 568.

## IV.

For the foregoing reasons, we will affirm the judgment of sentence.

---

[5] Thompson also argues that the District Court did not "adequately" consider his sentencing disparity argument under § 3553(a)(6) (courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Thompson Br. 25-26. For substantially the same reasons discussed above, this argument is not persuasive.

10