**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2424
_____

UNITED STATES OF AMERICA

v.

DAMON TODD CAREY,
                           Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-08-cr-00435-001)
District Judge: Hon. Sylvia H. Rambo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 18, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, Circuit Judges.

(Filed: March 20, 2019)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Defendant Damon Todd Carey appeals his sentence for violating the conditions of his supervised release. Because the Government proved that Carey violated his conditions and the District Court did not plainly err by not explaining its decision not to grant Carey's request for a downward variance in his sentence based upon his criminal history, we will affirm.

I

In 2009, Carey pleaded guilty to distribution and possession with intent to distribute cocaine. See 21 U.S.C. § 841(a)(1). Carey faced a Guideline range of 140 to 175 months, resulting in part from his Criminal History Category of V. He was assigned this category based on, among other things, several juvenile assault adjudications. At Carey's sentencing, his counsel asked the Distirct Court for leniency because he had a difficult upbringing and his prior offenses were "juvenile immature conduct." Dkt. No. 63 at 8. The District Court did not find this persuasive and observed:

> At an early age, [Carey had] seven juvenile adjudications, and four of them were for simple assault. Additionally, [Carey] committed the instant federal matter while he was on bail for carrying a firearm without a license, possession of marijuana, drug paraphernalia, and driving under the influence. [Carey] committed this offense less than two years after release from custody. He sold drugs while on bail and was in possession of firearms . . . Carey has failed to be deterred by previous placements and supervision.

Dkt. No. 63 at 14. The Court sentenced Carey to ten years of imprisonment and five years of supervised release.

In 2017, Carey was released from prison and started his term of supervised release, during which he was prohibited from possessing controlled substances. About a

year later, the Probation Office petitioned to revoke Carey's supervised release because of his suspected possession of controlled substances and obtained a warrant for his arrest.

Carey was arrested and appeared for a hearing. During the hearing, the District Court heard evidence about the arrest, the search of Carey's car and home, and recorded calls between him and his girlfriend. More specifically, the Court learned that a United States marshal, armed with the arrest warrant, surveilled Carey in Harrisburg, Pennsylvania. The marshal saw Carey leave his house with a bag and place it in the trunk of his car.[1] A search of the car's trunk revealed that the bag that contained about $80,000. A Harrisburg detective responded to the scene. He testified that: (1) Carey's girlfriend told him that there was "marijuana in duffel bags on the floor of the bedroom" she shared with Carey, App. 62-63; and (2) police found "approximately 5 pounds of marijuana, 11 ounces of cocaine, a kilo press, cutting agent, some packing paraphernalia, scales, [and] an owe sheet,"[2] App. 63.

The detective also testified about recorded phone calls between Carey and his girlfriend when Carey was in prison. During one call, Carey told her that she was "not doing what she was trained to do" and that "she should have got[ten] rid of everything." App. 66. Based upon the content of the conversation and his experience, the detective understood "everything" to refer to heroin.[3] Carey then asked her whether there was any

---

[1] During this hearing, the Government introduced the transcript of the marshal's testimony given at the preliminary hearing.

[2] Harrisburg police also found a loaded gun on the bed.

[3] Carey and his girlfriend did not explicitly say "heroin," but referred to the drug as "stuff that makes the people fall out." App. 66. According to the detective, "when heroin people overdose, they call it falling out." Id.

3

heroin left in the house, and she responded that she had disposed of it all.

Based on this evidence, the District Court found that the Government proved, by a preponderance of the evidence, that Carey possessed controlled substances, a Grade A violation of his conditions of supervised release. See U.S.S.G. § 7B1.1(a)(1).

The District Court then proceeded to sentencing. During sentencing, Carey did not move for a downward departure, but argued that his Criminal History Category of V "substantially overstate[d] his criminal history" because it accounted for his juvenile adjudications. App. 85. In response, the Government observed that Carey violated his supervised release less than a year after he was released from jail for possession of cocaine. It added that Carey had "[no] mitigating factors at all" since he was no longer a juvenile. App. 86. Without specifically discussing Carey's criminal history category, the Court stated that it "considered the factors listed in 18 U.S.C. [§] 3553" and sentenced Carey to 46 months in prison, which was at the bottom end of the advisory Guidelines range for his Grade A violation. App. 87; see U.S.S.G. § 7B1.4(a)(2). Carey made no objection. He now appeals.

II[4]

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review for abuse of discretion the District Court's decision to revoke supervised release. United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008). "However, the factual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review." Id.

Carey argues that the District Court erred by (1) finding that the Government proved that he violated his supervised release and (2) failing to rule on his request for a downward variance.[5]  We will evaluate each argument in turn.

A

Carey asserts that the revocation of his supervised release was improper because the Government failed to prove he violated his conditions of supervised release.

To revoke a defendant's supervised release, "[a] district court must find 'by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .'"  United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008) (quoting 18 U.S.C. § 3583(e)(3)).  Under the preponderance-of-evidence standard, "it is not necessary that the probationer be adjudged guilty of a crime, but only that the court be reasonably satisfied that he has violated one of the conditions."  United States v. Poelnitz, 372 F.3d

---

[5] On appeal, the parties refer to Carey's request as one for a downward departure, but the record shows that his request was for a downward variance.  Departures are "enhancements of, or subtractions from, a guidelines calculation based on a specific Guidelines departure provision" and "require a motion by the requesting party and an express ruling by the court."  United States v. Brown, 578 F.3d 221, 225 (3d Cir. 2009) (quotation marks omitted).  Variances "are discretionary changes to a guidelines sentencing range based on a judge's review of all the [18 U.S.C.] § 3553(a) factors and do not require advance notice."  Id. at 226.

Carey neither filed a motion nor orally requested a downward departure under the Guidelines during his sentencing.  Although he used language similar to the departure provision in U.S.S.G. § 4A1.3(b)(1), he did not cite that provision.  Moreover, he mentioned his criminal history in the context of the age of his prior juvenile adjudications and how they would no longer count toward his criminal history points.  Carey then argued that his criminal history category "substantially overstate[d]" his criminal history.  App. 85.  These remarks were immediately followed by comments about his drug addiction and childhood, relevant factors under § 3553(a).  Thus, Carey's request reflects one for a downward variance.

562, 566 (3d Cir. 2004) (quotation marks omitted).  A Grade A violation of supervised release results if the defendant commits "conduct constituting . . . a controlled substance offense," U.S.S.G. § 7B1.1(a)(1), such as drug possession, 18 U.S.C. § 3583(g).

The Government presented the following evidence, which provided the District Court a basis to conclude that Carey possessed controlled substances:

- Law enforcement found about $80,000 in the trunk of Carey's car;

- Carey's girlfriend informed law enforcement that they would find marijuana inside their home;

- Law enforcement found marijuana, cocaine, cutting agents, packing materials, scales, and other drug-related items inside the home; and

- While Carey was in prison, he asked his girlfriend whether she disposed of his heroin.

This evidence supports the Court's conclusion that the Government proved by a preponderance of the evidence that Carey possessed controlled substances.[6]

B

Carey also argues that the District Court made a procedural error by not addressing his request for a downward variance based on his allegedly overstated criminal history.  Although Carey contends that his procedural objection is reviewed for abuse of discretion, plain error review applies because he did not raise this objection after

---

[6] Even if we accept Carey's argument that the evidence "makes it equally likely" that his girlfriend "exercised dominion and control over the controlled substances and drug paraphernalia found in the residence," Appellant's Br. at 14, the evidence shows he exercised at least the same level of dominion and control, see United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992).  As the recorded phone call reveals, Carey showed his control over the drugs by telling his girlfriend that she was "not doing what she was trained to do" and that she should have disposed of the drugs.  App. 66.

the Court imposed its sentence. See United States v. Flores-Mejia, 759 F.3d 253, 255, 259 (3d Cir. 2014) (en banc).

Plain error review circumscribes "the authority of the court of appeals to remedy the error . . . ." Id. at 256. Under plain error review, we will only consider granting relief if Carey shows that: (1) there was error; (2) the error was "clear or obvious," and (3) the error affected his "substantial rights." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904 (2018); see Fed. R. Crim. P. 52(b). To show that the error affected his substantial rights, Carey must demonstrate a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." Rosales-Mireles, 138 S. Ct. at 1905 (quotation marks omitted). If all three prongs are satisfied, then we may exercise our discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks omitted).

Carey asserts that the District Court made a procedural error in imposing his sentence. To impose a procedurally correct sentence, a district court must, among other things, consider the factors under 18 U.S.C. § 3553(a), including any variance requests. United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010). Carey asserts the Court erred because it failed to address his variance request.

A sentencing court is required to address "colorable" arguments during sentencing. See Merced, 603 F.3d at 215. This requirement serves several purposes. Most significantly, it provides an appellate court with the reasons for the ruling so that it may conduct its review. See id. Here, the District Court did not make any statements at all concerning Carey's request for a variance, in which he essentially argued that if his

7

criminal history were calculated anew, his seven juvenile adjudications would likely not count toward his criminal history points. Although it is clear that the District Court did not grant the variance, as demonstrated by its within-guideline sentence, it did not provide any reasons or otherwise explicitly address his request as required by our precedent. Id. at 215 (requiring at least a "brief statement of reasons.") The failure to do so is error and it is plain.

The omission, however, did not affect Carey's substantial rights and thus he is not entitled to relief. See Rosales-Mireles, 138 S. Ct. at 1904-05. There have been no changed circumstances that would warrant a different view of his criminal history. As the Court previously observed, Carey had "seven juvenile adjudications," most of which were for simple assault, and the Court noted that his repeated conduct showed he was not "deterred by previous placements and supervision" when he was a juvenile. Dkt. No. 63 at 14. The Court was right. Like Carey's prior sentences, his federal sentence and supervision period did not deter him. Within one year of release from prison, Carey committed another offense. Because Carey has not shown that there was a reasonable probability that the Court would have granted his request to vary from the advisory Guideline range based on his criminal history, Rosales-Mireles, 138 S. Ct. at 1904-05, he has not demonstrated entitlement to relief.

IV

For the foregoing reasons, we will affirm the District Court's order revoking Carey's supervised release and its sentence.

8