

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2008

# USA v. Maloney

Precedential or Non-Precedential: Precedential

Docket No. 06-3745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Maloney" (2008). *2008 Decisions.* Paper 1648.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1648

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3745

_____

UNITED STATES OF AMERICA

v.

SHARIF MALONEY,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cr-00203-1)
District Judge: Honorable Jerome B. Simandle

_____

Argued December 13, 2007

Before: SLOVITER, AMBRO, Circuit Judges,
and POLLAK,[*] District Judge

(Filed: January 17, 2008)

_____

K. Anthony Thomas   (Argued)
Office of Federal Public Defender
Newark, N.J.  07102

      Attorney for Appellant

_____

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

George S. Leone
Office of United States Attorney
Newark, N.J.  07102

Glenn J. Moramarco    (Argued)
Office of United States Attorney
Camden, N.J.  08101

      Attorneys for Appellee

_____

OPINION OF THE COURT

_____

SLOVITER, <u>Circuit Judge</u>.

The District Court found Sharif Maloney guilty of violating three conditions of his supervised release and sentenced him to imprisonment for a year and a day and one additional year of supervision.  Maloney appeals.  We must consider whether there was adequate evidence to support the District Court's findings.  Although we review the record relating to all three conditions, the principal legal issue is whether the condition of supervised release requiring Maloney to notify his probation officer of questioning by law enforcement officers was impermissibly vague.

**I.**

In 2001, while on parole from a felony conviction in New Jersey state court, Maloney was convicted in federal court of possessing a firearm in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a term of twenty-eight months and eighteen days imprisonment and a three-year term of supervised release.  After completing his term of imprisonment and beginning his period of supervision on January 12, 2004, Maloney undertook work as a shoe peddler in Newark.

It was the view of the Probation Office that Maloney

2

"made a poor adjustment to supervision." App. at 215. In early 2006, it filed a petition charging Maloney with violating a number of the conditions of his supervised release. On May 16, 2006, Maloney pled guilty to one of the charges, i.e., that he had violated his conditions of supervision by associating with convicted felons; he was continued on supervised release with the additional condition that he serve six months in a halfway house. Before Maloney was designated to a facility, however, the Probation Office learned that he had attended the trial of a member of the "Bloods" street gang, entering and leaving the courtroom in close proximity with another convicted felon. The Probation Office also learned that Maloney had been issued a summons by the Newark Police Department for failing to display a peddler's license. Suspecting that Maloney had further violated the conditions of his supervised release, the Probation Office sought a warrant for his arrest.

While Maloney was detained pending a revocation hearing, the Probation Office learned that Maloney had been charged with eluding the police. This charge arose from New Jersey State Trooper Marcos Arroyo's report that a red Mercedes Benz registered to and driven by Maloney had fled after Trooper Arroyo attempted to stop the vehicle. Consequently, the Probation Office filed a petition charging Maloney with four violations of his supervised release: (1) failing to notify his probation officer that he had been questioned by police in connection with the summons for failure to display his peddler's license; (2) associating with a convicted felon;[1] (3) failing to report that he had purchased or had access to the red Mercedes; and (4) committing the crime of eluding a law enforcement officer during his period of supervision (hereafter referred to as Charges No. 1, No. 3, and No. 4).

At Maloney's revocation hearing, the government introduced testimony by Maloney's probation officer, Anthony

---

[1]Because the District Court found Maloney not guilty of Charge No. 2, we do not further discuss its underlying facts or otherwise refer to it in this opinion.

3

Nisi, and by Trooper Arroyo. Nisi testified about the summons Maloney was issued for failing to display his peddler's license on May 4, 2006 (Charge No. 1). When Nisi asked the Newark Police Department about the issuance of the summons, he "was informed that in order for this summons to be issued, contact is necessary" because "the law enforcement officer simply just does not write a summons and walk away." App. at 51. Nisi testified that Maloney did not notify him of this incident, although the two had met on May 23, 2006, more than two weeks after the summons was issued. When Nisi asked Maloney why he did not notify him of the summons, Maloney simply shrugged and responded that he did not know. The summons was ultimately dismissed.

Trooper Arroyo testified about the facts underlying the charge of eluding a law enforcement officer (Charge No. 4). In the early hours of May 7, 2006, Arroyo spotted the red Mercedes near the highway, recognizing the vehicle from an unsuccessful pursuit he had engaged in earlier that week. As the car slowly turned onto the highway Arroyo verified the license plate number and then illuminated the vehicle's interior with his spotlight for approximately ten seconds. Arroyo activated the overhead lights of his patrol car, the signal to stop. Instead, the car "fled," at a speed that Arroyo estimated was in excess of 110 miles per hour. App. at 21-22. Before the Mercedes fled, Arroyo viewed four black males in the car, but he concentrated on the driver, whom he later described as having dreadlocks. Later that day, Arroyo learned that the red Mercedes was registered to Maloney, obtained pictures of him from state databases, and identified him as the driver of the vehicle that he had pursued that morning.

Arroyo testified that he encountered the red Mercedes a third time the very next day, and on this occasion a woman identified as Summer Sprofera was driving the car. Arroyo testified that Sprofera told him Maloney was driving the red Mercedes in the early hours of May 7. Nisi confirmed that the red Mercedes and two additional vehicles were registered in Maloney's name, and that Maloney failed to report his ownership of those vehicles in his monthly supervision report.

4

In his defense, Maloney presented the testimony of his girlfriend, a friend, and an investigator from the Federal Public Defender's office. Saleemah Graham, Maloney's girlfriend, testified that she was with Maloney during the early hours of May 7, that she did not believe Maloney would have purchased the red Mercedes, and that she had spoken to Tamar Watson, later identified as Rajan Ali, who stated that Maloney had registered the vehicle for him as a favor. Graham also stated that Maloney had braids, rather than dreadlocks. Maloney's friend, Otto Chase, testified that he had never seen Maloney in a red Mercedes and did not know him to own such a vehicle. The investigator, Ben Grade, testified that he interviewed the red Mercedes' previous owners and that they did not identify Maloney as the purchaser of the vehicle. He also testified that he interviewed Sprofera, and that she asserted that her boyfriend, Ali, was the red Mercedes' actual owner, that she had never seen Maloney in the car, and that she did not remember telling Arroyo that Maloney was driving the car on May 7. Sprofera did not testify, nor did Ali. Investigator Grade did not interview Ali.

In a statement that he made to the Court at the end of the hearing, Maloney denied that he owned or had driven the red Mercedes; rather, he stated that he had registered the car as a favor to Ali, whom he had met through his peddling business and who was the actual driver on the night in question. Regarding his failure to list the car in his monthly report, Maloney stated that he did not consider himself the owner of the vehicle, that the car was no longer registered in his name at the time he turned in his written report, and that he simply forgot to put it in his report. Finally, with respect to the summons, Maloney stated that he did not report that incident to his probation officer because he was asked for his peddler's license nearly every day and that on the occasion at issue he had not been arrested for wrongly displaying that license, but was merely issued a citation. Thus, he did not believe that he was required to report this incident.

The District Court found by a preponderance of the evidence that Maloney was guilty of violating his conditions of supervised release by failing to report that he had been

questioned by a law enforcement officer, failing to report that he owned or drove the red Mercedes, and committing a crime by eluding a law enforcement officer. On August 8, 2006, the District Court sentenced Maloney to twelve months and one day imprisonment and an additional year of supervised release. Maloney timely filed a notice of appeal.

## II.

The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3583(e)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.

A district court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3). The District Court's decision to revoke supervised release is reviewed for abuse of discretion. See Gov't of Virgin Islands v. Martinez, 239 F.3d 293, 297 (3d Cir. 2001). However, the factual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review. United States v. Poellnitz, 372 F.3d 562, 565-66 & n.6 (3d Cir. 2004) (citing United States v. Blackston, 940 F.2d 877, 882 (3d Cir. 1991)).

## III.

Charge No. 1 concerns Maloney's failure to notify his probation officer of the incident during which he received a summons for improperly displaying his peddler's license. The other two charges relate to the red Mercedes: its ownership and the identification of Maloney as the driver on May 7, 2006. Accordingly, we separate our analysis of the charges.

## A.

The charges relating to the red Mercedes do not require extensive discussion.

The standard conditions of supervision require that an individual "shall not commit another federal, state, or local

6

crime during the term of supervision." App. at 210. They also require that the supervisee "shall submit a truthful and complete written report within the first five days of each month." App. at 210. Pursuant to the latter condition, Maloney was required to report all vehicles that he owned or drove during each reporting period. If we affirm the District Court's judgment that Maloney violated the former condition by eluding the police in the red Mercedes, we must also affirm the judgment of violation based on Maloney's failure to report that he owned or drove that vehicle. We focus, then, on the District Court's conclusion that Maloney committed a crime by eluding the police while driving the red Mercedes on May 7, 2006.

Maloney argues (1) that the District Court's consideration of Arroyo's identification testimony violated due process and (2) that there was insufficient evidence to prove that Maloney was the driver of the red Mercedes on May 7, 2006. The first of these arguments challenges Arroyo's identification as a matter of law and is subject to de novo review whereas the second challenges the District Court's factual findings and will be reviewed for clear error.

Maloney emphasizes that "[a]n identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process." United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006) (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)). Once the court determines that an identification procedure is unnecessarily suggestive, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199 (1972). The Supreme Court has instructed that the following factors should be considered by courts to assist their analysis of reliability: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of his prior description of the criminal," (4) "the level of certainty demonstrated at the confrontation," and (5) "the time between the crime and the confrontation." Brathwaite, 432 U.S. at 114 (citing Biggers, 409 U.S. at 199-200); see also Brownlee,

7

454 F.3d at 139. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Brathwaite, 432 U.S. at 114.

We cannot quarrel with Maloney's argument that Arroyo's identification of Maloney followed a suggestive procedure. After his observation of the red Mercedes, Arroyo returned to the station and obtained official photographs of the registered owner of the Mercedes, who was Maloney. Arroyo viewed those photographs and concluded that Maloney was the driver he sought.

The District Court credited Arroyo's identification of Maloney, noting that Arroyo "was close enough to have gotten the license number and to have gotten it correctly and then to have matched it up with the defendant's name and gotten a positive identification after examining photographs, [which] were unquestionably of the defendant." App. at 187. The District Court also explicitly considered all aspects of Arroyo's viewing conditions, Arroyo's confusion regarding braids and dreadlocks,[2] the alibi offered by Maloney's girlfriend, and Maloney's contention that Ali was the driver on the night in question. Considering whether Arroyo got "a good enough view of the driver in order to say with certainty, as he did on the witness stand, that Mr. Maloney was the driver who eluded," the District Court concluded that "[i]f the standard here were proof beyond a reasonable doubt, I would probably acquit, but the standard is proof by a preponderance of the evidence. Here the preponderance of the evidence demonstrates that Mr. Maloney was the driver of the vehicle on the night in question." App. at 187-88.

Although Biggers guides our analysis of Arroyo's

---

[2] When Arroyo was informed that Maloney had braids, rather than dreadlocks, he stated that he did not "know how to match the name with the style . . . ." App. at 44. Accordingly, Arroyo's mistake may be seen as one of terminology rather than misidentification.

identification, we must also take into account the context in which the identification was introduced. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (noting that "due process is flexible and calls for such procedural protections as the particular situation demands"); cf. United States v. Smith, 571 F.2d 370, 373 n.3 (7th Cir. 1978) (per curiam). Arroyo's identification testimony was not submitted as evidence at a criminal trial, and Maloney did not seek suppression of Arroyo's testimony. Arroyo's testimony about his identification of Maloney was given at the revocation hearing, where he faced not only cross-examination, but was rigorously questioned by the District Court.

Revocation proceedings are subject to "minimum requirements of due process." Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973) (quoting Morrissey, 408 U.S. at 489). Those requirements include:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . and (f) a written statement by the factfinder as to evidence relied on and reasons for revoking [probation or] parole.

Id. at 786 (quoting Morrissey, 408 U.S. at 489). These requirements have been incorporated into Rule 32.1 of the Federal Rules of Criminal Procedure, which governs the revocation of supervised release. See United States v. Barnhart, 980 F.2d 219, 222 (3d Cir. 1992) (citing Fed. R. Crim. P. 32.1 advisory committee's note). Maloney does not argue that the revocation procedure at issue here failed to satisfy the due process requirements set forth in Morrissey/Scarpelli and Rule 32.1.

At Maloney's revocation hearing, the District Court

recognized that the procedure Arroyo used to identify Maloney was suggestive, but the Court carefully analyzed the reliability of that identification, noting that Arroyo was close enough to the red Mercedes to read its license plate, had employed his police training to focus his attention on the driver, was certain of his testimony, and had identified the suspect less than twenty-four hours after the initial viewing. The District Court weighed these factors with the sub-optimal viewing conditions, the terminological discrepancy in Arroyo's description of the suspect's hairstyle, and the corrupting nature of the particular identification procedure used here. After independently considering the Biggers factors and taking into account Maloney's extensive cross-examination of Arroyo pursuant to Rule 32.1, we conclude that the District Court's consideration of Arroyo's identification testimony did not violate the due process protections guaranteed to Maloney at his revocation proceeding.

Maloney also challenges the sufficiency of the evidence supporting the District Court's finding that he was guilty of eluding the police. The District Court emphasized that the standard of review applicable at the revocation hearing was vital to its decision. The same is true of our conclusion. We find that the District Court did not clearly err in finding Maloney guilty by a preponderance of the evidence after considering Arroyo's identification testimony, Maloney's registered ownership of the red Mercedes, and Maloney's alibi. Because we affirm the District Court's conclusion that Maloney was driving the red Mercedes in the early hours of May 7, 2006, we also affirm its conclusion that Maloney violated his supervised release by failing to report that he owned or drove that vehicle (Charge No. 3). The Court also found that Maloney's evidence purporting to show that Ali, and not Maloney, was the true owner simply did not overcome the presumption that Maloney, in whose name the car was registered, was the owner at the relevant time. That finding was not clearly erroneous.

**B.**

A standard condition of supervised release requires supervised individuals to "notify the probation officer within

10

seventy-two hours of <u>being arrested or questioned by a law enforcement officer</u>." App. at 210 (emphasis added). The District Court held that Maloney violated this condition when he failed to report that a law enforcement officer asked him for his peddler's license, and that Maloney's subsequent receipt of a summons for failing to produce the proper license "should have impressed upon him the importance of complying with this condition and reporting this questioning by law enforcement to his probation officer." App. at 182. Maloney argues that the term "questioned" in this condition is impermissibly vague and that the District Court's guilty determination must be vacated.

The vagueness doctrine is premised on fairness, and thus requires that individuals are given "fair warning" of their legal obligations. <u>San Filippo v. Bongiovanni</u>, 961 F.2d 1125, 1135-36 (3d Cir. 1992) (quoting <u>Colten v. Kentucky</u>, 407 U.S. 104, 110 (1972)). We have held that "a condition of supervised release violates due process and is void for vagueness if it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" <u>United States v. Lee</u>, 315 F.3d 206, 214 (3d Cir. 2003) (quoting <u>United States v. Loy</u>, 237 F.3d 251, 262 (3d Cir. 2001)). In addition, such conditions "must provide specific standards which avoid arbitrary and discriminatory enforcement." <u>Tolchin v. Supreme Court of New Jersey</u>, 111 F.3d 1099, 1115 (3d Cir. 1997) (citing <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 109 (1972)).

Here, the meaning of the term "questioned" in the condition of supervision was extensively discussed during Maloney's revocation hearing. The diverging constructions and artificial limitations attached to that term demonstrate the unsettled nature of its boundaries.

Nisi, Maloney's probation officer, testified that the incident was covered by the condition because "contact" with law enforcement was necessary for the issuance of a summons and Maloney knew that he was required to report any contact with law enforcement. On cross-examination, Nisi reiterated that he equated questioning with contact, and asserted that

11

Maloney "basically knows what I mean by basic contact with law enforcement." App. at 65-66. Nisi conceded that a court officer's request for identification upon entering the courthouse would not constitute contact sufficient to violate the condition. Nonetheless, although Nisi did not know what information Maloney had given to the code enforcement officer who issued the summons, he concluded that the failure to report the incident was a violation of Maloney's condition of supervision.

Maloney stated that police and code enforcement officers routinely approached him in his capacity as a peddler and asked him to produce his peddler's license. During the incident in question, Maloney showed the code enforcement officer his peddler's license but was issued a summons because a corresponding license that he was required to display on his cart was not visible. Maloney stated that he did not believe this incident to be within the scope of his conditions of supervision because he was regularly asked for his license and he had not been arrested in connection with the incident at issue. Maloney analogized the incident to the issuance of a parking ticket, stating that he believed the condition required him to report questioning when he was in custody or had been arrested, rather than upon the receipt of a citation.

The District Court also commented on the breadth of the condition, stating that it would be "ridiculous" to suggest that the condition was so broad as to encompass the basic questions asked when one enters a federal building or undergoes a routine security check at an airport. App. at 168. However, the District Court asserted that the condition was not so narrow as to be limited to contact resulting in a conviction. The District Court then focused on the facts of this case, emphasizing that the questioning of Maloney had resulted in the issuance of a summons. The District Court stated that failure to report "a mere contact wouldn't be a violation," but that the purpose of the broad reporting requirement is to allow probation officers to exercise their judgment about whether a particular instance of questioning was important. App. at 176. The District Court opined that "[t]here are plenty of other instances where such questioning probably would not rise to the level of what's

12

anticipated here," but concluded that "this isn't one of them." App. at 183. The Court concluded, therefore, that "as a matter of due process, [Maloney] was put on notice" of his obligation to report the incident at issue. App. at 183.

The divergent attempts to interpret the term "questioned" during Maloney's revocation hearing illustrate the ambiguous scope of this condition of supervised release. There is general consensus that a simple request for identification would not violate the condition despite the fact that such a request clearly fits within the definition of the word and could be construed as a technical violation of the condition. Yet there is a glaring lack of consistency regarding the level of interaction required to transform basic contact with law enforcement into an incident that must be reported in order to avoid possible imprisonment. Although Nisi and the District Court considered the issuance of a summons material, the language of the condition focuses not on the result of the questioning, but on the simple act of questioning. We will not read the condition of supervision to incorporate a result-based threshold that is not evident on its face. See United States v. Johnson, 446 F.3d 272, 281 (2d Cir. 2006) ("Generally, supervised release provisions are read to exclude inadvertent violations.") (citing Arciniega v. Freeman, 404 U.S. 4 (1971) (per curiam)). The District Court could have required Maloney to report the receipt of a summons or citation as a condition of his supervised release, but that was not listed as a condition of supervised release. The condition regarding questioning may not be used to encompass the mere receipt of a code enforcement summons in the absence of an express condition to that effect.

Nor do we endorse Nisi's broad interpretation of the questioning condition. Courts have warned against according undue deference to a probation officer's interpretation of a condition of supervision, as "[a] probation officer could well interpret the term more strictly than intended by the court or understood by" the individual being supervised. United States v. Guagliardo, 278 F.3d 868, 872 (9th Cir. 2002). Nisi's characterization of the condition as applying to mere "contact" with law enforcement demonstrates the validity of this concern.

13

The text of the condition of supervision does not include the word "contact," and Maloney's testimony implies that he read the condition at face value to cover arrest and similarly serious questioning. There is no corroboration in the record that Nisi notified Maloney of his broad construction or that Maloney understood that he was to report every "contact" with law enforcement.

The government, relying on Morrissey, 408 U.S. at 478-79, contends that vague conditions of supervised release simply reflect the broad discretion accorded to probation officers and that the exercise of this discretion does not undermine the condition challenged here. However, a vague condition of supervision "cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of 'basic policy matters to policemen . . . for resolution on an ad hoc and subjective basis.'" Loy, 237 F.3d at 266 (quoting Grayned, 408 U.S. at 109). Moreover, our concern is not with the discretion of the probation officer per se, but with the specificity of the condition of supervision as drafted. Therefore, that the system of supervised release affords a great deal of discretion to probation officers does not affect our consideration of whether the written condition is impermissibly vague. To hold otherwise would foreclose the possibility that a condition of supervised release may be found impermissibly vague.

In sum, the record reflects that Maloney was required to "guess at [the] meaning" of the term "questioned" in his condition of supervision and that "men of common intelligence" differed as to its application under the very circumstances presented here. Id. at 267 (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)). Accordingly, we conclude that, as applied in the factual setting of this case, the condition of supervision requiring Maloney to report that he had been "questioned" by law enforcement was impermissibly vague.

We do not lightly reach this conclusion, nor do we hold that all instances of questioning would be the basis for a

14

successful challenge to this standard condition of supervision. Rather, the proximity of the terms "arrested" and "questioned" in the condition demonstrates that Maloney's interpretation was not unreasonable in the circumstances of this case. The interaction between Maloney and the code enforcement officer is not comparable to the contact generally contemplated by the notion of arrest and questioning. This was not a situation involving sustained questioning of a suspect in a pending criminal investigation. It was not even the type of questioning incident to a criminal trespass warning issued to a supervisee following multiple police complaints of stalking and harassment, e.g., United States v. Salinas, 365 F.3d 582, 584 (7th Cir. 2004), nor the type of questioning relating to a disorderly conduct charge where a supervisee threatened to strike his victim with a baseball bat, e.g., United States v. Marvin, 135 F.3d 1129, 133 (7th Cir. 1998). Here, Maloney was merely subject to a citation and the summons was dismissed.

It is important that conditions of supervision be drafted with sufficient specificity to ensure that they do not result in the arbitrary enforcement of supervised release. As applied to the facts of this case, the language of the questioning condition left open such arbitrariness. Our statement in Loy that the condition "as currently written violates due process by failing to provide [defendant] with adequate notice" of what he must do so as not to violate his supervised release, 237 F.3d at 267, is equally applicable here. We cannot sustain the finding of a violation as to Charge No. 1.

## IV.

The government, citing United States v. English, 400 F.3d 273, 276 (5th Cir. 2005), argues that if we sustain even a single violation, we may deem any other errors harmless and affirm the judgment of sentence. Unlike the court in English, however, the District Court did not explicitly indicate that its judgment would remain the same even if certain aspects of its decision were not sustained on appeal. See id. On the contrary, the District Court stated that the violation premised on eluding would "drive the sentence more than the" other two violations. App. at 317

15

(emphasis added).  Under these circumstances, we believe remand is necessary to give the District Court the opportunity to consider whether a shorter period of supervised release would be appropriate in light of our reversal of violation as to Charge No. 1.

## V.

For the above-stated reasons, we will reverse the judgment of guilty as to Charge No. 1, affirm the judgment of guilty as to Charges Nos. 3 and 4, and remand for resentencing.