NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1322
_____

UNITED STATES OF AMERICA

v.

JAMES E. HALL,

Appellant
_____

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 05-366)
District Judge: Honorable Donetta Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2010
_____

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion Filed:  October 28, 2010)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant James E. Hall ("Hall") contends that the sentence imposed upon him for

1

violating the conditions of his supervised release was procedurally and substantively unreasonable. He additionally contends that the sentence violates his due process rights because the government failed to provide any evidence to support one of the bases for his violation. For the reasons set forth below, we will affirm Hall's sentence.

## I. FACTS

We write solely for the benefit of the parties and recount only the essential facts.

On March 13, 2006, Hall pled guilty to a two count indictment, charging him with (1) a violation of 18 U.S.C. § 513(a) (uttering and possessing a forged check) and (2) a violation of 18 U.S.C. § 1701 (obstruction of the mail). (App. 51-72.) That same day, the District Court held a bond revocation hearing, based on Hall's violation of several conditions of his pretrial release. (Id. at 74-86.) As a result of the hearing, Hall was placed on electronic monitoring. (Id. at 85.) Hall never allowed the electronic monitoring to be set up, (id. at 90-91), and he violated other conditions of pretrial release (id. at 92, 96-97). Based on these violations, Hall's pretrial release bond was revoked on April 10, 2006. (Id. at 100.)

On June 28, 2006, Hall was sentenced to a term of twelve months and one day on Count One, and six months on Count Two. Both sentences were to run concurrently. Restitution was also ordered. The District Court waived the fine. Hall also received three years of supervised release, to commence upon his release from custody. (Id. at 122-23.) Hall completed his federal sentence of incarceration, and subsequently served a state sentence of incarceration in North Carolina on unrelated charges. He was released

2

on October 30, 2008. (Id. at 129.) Due to the terms of supervised release in his state sentence, he was not allowed to return to Pennsylvania immediately upon his release. (Id.) He returned to Pennsylvania on March 20, 2009. (Id.)

Upon his return to Pennsylvania, he failed to contact the Probation Office, as required. (Id.) He also failed to respond to letters from the Probation Office. (Id.) At a revocation hearing on September 11, 2009, the District Court heard testimony from the Probation Officer assigned to Hall's case. The Probation Officer recounted her unsuccessful attempts to contact Hall, beginning July 15, 2009, as well as Hall's untruthfulness regarding his employment and his sisters' concern about checks missing from their grandmother's check book to which Hall had access when living with his grandmother while on supervised release. (Id. at 142-51.) The District Court placed Hall on electronic monitoring, noting it was accepting the Probation Officer's recommendation to "give [him] one more chance . . . to comply." (Id. at 161.)

Hall did not heed the District Court's warning, and failed to comply with the conditions of electronic monitoring. (Id. at 164-65.) In fact, he failed to appear at the next scheduled revocation hearing on November 9, 2009. (Id. at 164.) The District Court issued a bench warrant, and Hall was subsequently arrested on January 8, 2010. (Id. at 172.)

At the revocation hearing on January 13, 2010, the District Court heard testimony from Hall, as well as two probation officers. The testimony addressed Hall's failure to comply with electronic monitoring; his failure to report to the Probation Office; his

3

failure to report for mental health testing; his failure to appear at the revocation hearing on November 9, 2009; his state criminal charges that were dismissed; and positive drug test results. (Id. at 172-88.) The District Court found, and Hall's counsel agreed, that Hall had committed a Class C violation, and calculated the sentencing range established by the Sentencing Guidelines to be six to twelve months. (Id. at 191, 193.) After addressing the § 3553(a) factors, the District Court concluded that Hall had lied during his testimony, and sentenced Hall to twenty-one months of incarceration, which was the time remaining on his term of supervised release. (Id. at 197-98.)

## II. Jurisdiction

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III. Standard of Review

Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), "it is now well understood that an appellate court reviews a sentence for reasonableness with regard to the factors set forth in 18 U.S.C. § 3553(a). We see no reason why that standard should not also apply to a sentence imposed upon a revocation of supervised release, and we so hold." U.S. v. Bungar, 478 F.3d 540, 542 (3d Cir. 2007) (internal citations omitted). "Subsequently, Gall made it plain that we assess unreasonableness under the abuse-of-discretion standard." U.S. v. Tomko, 562 F.3d 558, 564 (3d Cir. 2009) (citing Gall v. U.S., 552 U.S. 38 (2007)).

"In order for a sentence to be reasonable, the record must demonstrate that the

4

sentencing court gave 'meaningful consideration' to [the § 3553(a)] factors. [1] The court

need not, however, discuss a defendant's clearly nonmeritorious arguments, or otherwise

'discuss and make findings as to each of the § 3553(a) factors if the record makes clear

---

1 Section 3553(a) provides that:
> The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for
>> (A) [the particular offense and the particular defendant by the Sentencing Guidelines]; or
>> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
> (5) any pertinent policy statement--
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

the court took the factors into account in sentencing.'" Bungar, 478 F.3d at 543 (quoting

U.S. v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)). "In addition to demonstrating that it

gave meaningful consideration to the § 3553(a) factors, a sentencing court must

demonstrate that it reasonably applied those factors to the circumstances of the case. Our

review in this regard is highly deferential." Id. (internal citations omitted). Stated

another way, our review has two steps. First, we must ensure that the district court

committed no procedural error, such as incorrectly calculating the Guidelines range.

Second, we must consider the substantive reasonableness of the sentence. Tomko, 562

F.3d at 567 (citing Gall, 552 U.S. at 51).

When considering a sentence imposed for revocation of supervised release, other

factors apply. That is, 18 U.S.C. § 3583(e) permits a court to sentence a defendant to up

to two years of imprisonment for violation of a class C offense, after consideration of the

§ 3553(a) factors.[2] Section 3583(e) also allows a district judge to require a defendant to

serve the unexpired term of supervised release in prison.

## IV. Discussion

### A.

Hall argues that his sentence is both procedurally and substantively flawed. We

disagree.

---

[2] Notably, § 3583(e) omits § 3553(a)(2)(A) (describing the punitive purposes of sentencing) and § 3553(a)(3) ("the kinds of sentences available") from the factors to be considered when sentencing a defendant for a violation of supervised release.

Procedurally, the District Court correctly calculated the applicable Guidelines range. The District Court also considered the § 3553(a) factors, and then imposed sentence. While Hall claims the District Court did not mention any § 3553(a) factors, there is no requirement that the District Court recite the factors verbatim. Rather, the record simply must demonstrate that the court considered the factors. Bungar, 478 F.3d at 543. Here, the District Judge noted her familiarity with Hall's criminal history, both generally and in connection with the present offense. (App. 196-97.) She also acknowledged the need to provide deterrence to future wrongdoing, and the need to protect at least one member of the public — Hall's grandmother — from further crimes. She noted the range of sentences available, and, in fact, had already attempted to impose a less restrictive sentence for a prior violation by placing Hall on electronic monitoring. As the record demonstrates, this effort was to no avail. The District Court did not discuss any relevant policy statements, nor did she comment on the need to avoid sentencing disparities. However, there is no requirement that the District Court address every single factor so long as the majority of the factors were addressed. Id. Procedurally, the District Court's sentence was reasonable.

Substantively, Hall argues that the District Court's failure to consider every available alternative sentence, such as sending him to a half-way house, combined with the length of his sentence, renders his sentence unreasonable. Hall bases this argument on several factors: his belief that this was his "first real revocation;" the length of the sentence compared to his sentence for his original offense; and the deviation from the

7

Guidelines range.  (Br. for Appellant 17.)

Contrary to Hall's assertion, this was his second revocation hearing, and it, like the hearing in September, cited him for numerous violations.  Further, there is no requirement that the sentence for a revocation of supervised release be less than the sentence for the original offense.  U.S. v. Dees, 467 F.3d 847, 853 (3d Cir. 2006) ("We decline to find a sentence imposed upon revocation unreasonable simply because it exceeds the initial sentence of imprisonment when the District Court has ably identified the reasons warranting such punishment.").  Finally, district courts are permitted to deviate from the Guidelines range, so long as they articulate reasons for doing so.  Here, the District Court stated reasons for the departure, which, upon review, we find to be reasonable and not an abuse of discretion.

**B.**

Hall also argues that the case should be remanded because the government failed to introduce any evidence to support the allegation that Hall failed to complete his mental health evaluation.  Hall acknowledges that sufficient evidence existed to support the finding that he committed one Class C violation, so his Guidelines range would not change.  However, he believes he is entitled to remand for a resentencing since the failure to produce evidence was a violation of his Fifth Amendment right to due process.

"A district court must find 'by a preponderance of the evidence that the defendant violated a condition of supervised release. . . .'" U.S. v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008) (quoting 18 U.S.C. § 3583(e)).  The factual findings supporting the decision to

revoke supervised release are reviewed for clear error. Id.

According to the Petition on Supervised Release, on September 22, 2009, Hall appeared two hours late for his appointment with Dr. Robert Coufal and was unable to complete the mental health evaluation. He was instructed to return on September 24, 2009. He failed to do so. (App. 50.) In an effort to provide an "explanation for some of the failures on his part," (id. at 171), Hall testified at the revocation hearing on January 13, 2010. According to Hall, he went to Dr. Coufal's office twice — "two days back to back," and then he "never heard anything from [Dr. Coufal's assistant] or Dr. Coufel [sic] since." (Id. at 181.)

After hearing the testimony introduced by both the government and Hall, the District Court found all of Hall's testimony to be untruthful. Specifically, the District Court stated that "I think you have lied here today to me," and "I don't know why you left the mental health evaluation and didn't return when you were supposed to. But you didn't do it." (Id. at 97.)

Given the evidence presented, the District Court did not clearly err in concluding that Hall did not complete the mental health evaluation. Even if the District Court had accepted Hall's testimony that he attended two sessions at Dr. Coufal's office as truthful, his testimony supports the finding that he failed to complete the mental health evaluation. He testified that he participated in some tests with Dr. Coufal's assistant. Nowhere did he state that he had completed the evaluation. Rather, his testimony supported the statement in the Petition on Supervised Release that he failed to complete the mental

health evaluation.

Looking at the record as a whole, the District Court did not err in concluding Hall failed to complete the mental health evaluation. Evidence existed to support the District Court's finding that Hall failed to complete the mental health evaluation. We see no reason for the government to introduce evidence on this issue, as Hall suggests, when Hall's own testimony, introduced before the government's witnesses took the stand, supported the District Court's conclusion.[3]

## V.  Conclusion

We find that Hall's sentence is not procedurally or substantively defective. We also conclude that the District Court did not clearly err in rejecting Hall's explanation as to his failure to complete the mental health evaluation. Therefore, we will affirm Hall's sentence.

---

[3]  Section 3583(e)(3) requires a district court to "find[] by a preponderance of the evidence that the defendant violated a condition of supervised release;" it does not place any burden of production on the government.