**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3183
_____

UNITED STATES OF AMERICA

v.

ERIC C. NORTON,
                              Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 4-07-cr-00075-001)
District Judge:  Honorable Matthew W. Brann
_____

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2015
_____

Before: HARDIMAN, SCIRICA and BARRY, Circuit Judges

(Opinion Filed: March 13, 2015)
_____

OPINION[*]
_____

BARRY, Circuit Judge

Eric C. Norton appeals from a judgment revoking his supervised release;

sentencing him to six months' incarceration, which term he has served; and reimposing a

_____
[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

lifetime term of supervised release. Norton's primary argument is that his right to confrontation was violated when, at the revocation hearing, the District Court relied on unreliable hearsay evidence. We will affirm.

I.

In January 2008, after pleading guilty to possession of child pornography, Norton was sentenced to 78 months' incarceration, followed by lifetime supervised release. In addition to the standard conditions of supervision, Norton was subject to nine additional conditions. The special condition relevant to this appeal provided that Norton

> shall participate, at [his] expense, in a sex offender treatment program, which may include risk assessment testing, counseling and therapeutic polygraph examinations, and shall comply with all requirements of the treatment provider. The treatment is to be conducted by a therapist approved by the probation officer.

(App. 103.)

Norton was released from prison in October 2012 and began a treatment program in May 2013, attending 45 counseling sessions with John Youngman, a licensed clinical social worker, between May 2013 and April 2014. In connection with this treatment, Norton underwent the first of two polygraph examinations on December 2, 2013. The polygraph examiner's report indicated "[s]ignificant [r]eactions" to certain questions relating to past victims. (App. 95.) The report recommended that Norton be given another exam in several months "assuming that YOUNGMAN was able to break down [Norton's] denials regarding past victim(s)." (*Id.*) Further, the examiner wrote, "a

2

maintenance/monitoring exam should be given in approx. 6 months to assist [Mark] KEHLER [Norton's probation officer], unless of course something else arises." (*Id.*) The District Court was informed of the results on January 28, 2014, and permitted Norton to continue under supervision "pending further treatment and a second polygraph examination." (App. 7.)

Norton was tested again on March 20, 2014. The examiner's report states that he "could not determine the result of the examinee's polygraph charts" because "the examinee employed Countermeasures/being Purposely Non-Cooperative (PNC) during his entire exam." (App. 97.) The examiner suggested that Probation Officer Kehler "may want to [be] more vigilant" with Norton, and that Youngman "may have to determine whether or not to continue with treatment . . . because [Norton] is being non-compliant with his therapy ([he] is not being honest about his past & therefore unmanageable)." (App. 98.) Both polygraphs were administered by a Pennsylvania state trooper who was working as an independent contractor for purposes of the polygraph examinations here.

On April 30, 2014, Youngman sent Kehler a letter indicating that while Norton was "generally compliant and engaging" in their sessions and had shown "improved insight into the dynamics of his past sexual offending," he also had "demonstrated non-compliance w[ith] directives and probable deceptive responses during his two polygraph examinations." (App. 92.) Youngman wrote that he had been unsuccessful in convincing Norton to be more transparent, and was discharging Norton because he "failed to adequately manage his risk factors for re-offense." (*Id.*)

3

On May 9, 2014, a petition to revoke Norton's supervised release on the ground that he violated a condition of that release was filed. Norton contested the charged violation, and the District Court held a revocation hearing on June 17, 2014. The Government relied on the polygraph reports and Youngman's letter. Norton called Kehler to testify. The Court found that Norton had violated the condition at issue, sentenced him to six months' incarceration, and reimposed lifetime supervised release. Norton timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 and 18 U.S.C. § 3583(e)(3). Under 18 U.S.C. § 3583(e)(3), supervised release may be revoked if a district court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." The Government has the burden of proof. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "The District Court's decision to revoke supervised release is reviewed for abuse of discretion," while the "factual findings supporting that decision are reviewed for clear error" and "legal issues are subject to de novo review." *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008).

## III.

Norton contends that by permitting the Government to meet its burden at the hearing with "unreliable hearsay evidence," his right to confrontation was violated.[1]

---

[1] Before the District Court and before us, Norton incorrectly identified the source of his claimed right to confrontation as the Sixth Amendment, rather than the Fifth Amendment's Due Process Clause.

4

(Appellant's Br. 10.) The Government counters that the Court "properly deemed reliable the Youngman Letter and Polygraph Reports because they were detailed, were written by people who did not have adversarial relationships with Norton, did not contain multiple levels of hearsay, and were corroborated by the independent testimony of Kehler." (Gov't Br. 10.)

As the parties recognize, hearsay evidence can be used to support a revocation of supervised release. Fed. R. Evid. 1101(d)(3); *United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009). A releasee does, however, retain a limited right of confrontation at the revocation hearing as a matter of due process. *Lloyd*, 566 F.3d at 343. Fed. R. Crim. P. 32.1(b)(2)(C), embodying this principle, provides that the releasee is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." In applying Rule 32.1(b)(2)(C), a district court must balance the releasee's interest in his right of confrontation against the Government's reason for denying it. *Lloyd*, 566 F.3d at 344-45.

It is difficult to see how any right of confrontation enjoyed by Norton was violated and, more specifically, how he was denied the "opportunity to . . . question any adverse witness." When, on Norton's behalf, his attorney invoked that right, the District Court responded that he could subpoena Youngman and the polygraph examiner, the witnesses Norton claims he needed to call, and the Court could evaluate that testimony. (App. 22.) Indeed, the Government had earlier stated that "If [Norton] prefers to have an

adjournment to bring these witnesses in, we would have no objection to that . . . ." (*Id.* at 19.) Norton did not seek an adjournment, and, although he called Kehler to testify, he made no effort to subpoena any other witness. He surely had the "opportunity" to do so. That forfeited opportunity clearly undermined Norton's asserted interest in "confrontation" and enabled the District Court to strike the balance it did in favor of the reliability of the relatively detailed polygraph reports and the Youngman letter.

IV.

The order of the District Court will be affirmed.[2]

---

[2] We have reviewed Norton's subsidiary arguments and reject them. In brief, the condition Norton was found to have violated was not vague and the discretion of the probation officer was appropriately limited thereunder. Moreover, the revocation was based not on the results of the polygraphs, but on Norton's violation of the condition that he participate in treatment and comply with the provider's requirements.