**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1762
_____

UNITED STATES OF AMERICA

v.

MARCUS POUGH,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:06-cr-00686-001)
District Judge:  Honorable Michael M. Baylson

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 20, 2016

Before:  FISHER, CHAGARES and COWEN, Circuit Judges.

(Filed: January 22, 2016)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

Defendant Marcus Pough appeals the District Court's judgment revoking his term

of supervised release and resulting sentence of sixty months of imprisonment.  Pough

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

raises two primary issues:  (1) whether the District Court erred when it construed his state court testimony as an admission of a violation of his supervised release term; and (2) whether his revocation sentence is procedurally unreasonable.  For the reasons that follow, we will vacate the judgment and remand to the District Court.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition.  In 2008, after pleading guilty to a two-count indictment,[1] Pough was sentenced to a term of 60 months of imprisonment to be followed by five years of supervised release.  Pough began his supervised release on July 1, 2011.  His term of supervised release included a standard condition that Pough "shall not commit another Federal, state or local crime and shall not illegally possess a controlled substance."  See Appendix ("App.") 27.

On June 27, 2012, Pough was arrested in Philadelphia and charged with conspiracy, murder, and related offenses in the Philadelphia Court of Common Pleas. The state charges were based on allegations that Pough was the getaway driver in a murder-for-hire plot.  The next day, on June 28, 2012, the United States Probation Office filed a petition charging Pough with violating his federal supervised release for his

---

[1] Pough pleaded guilty to one count of possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

alleged role in the murder-for-hire.[2] The petition was held pending resolution of the state court case.

In the state case, the prosecution's primary evidence against Pough was his written, uncounseled confession made on June 27, 2012, at the police station. His signed statement admitted that he was offered $10,000 to act as the getaway driver for two assailants who shot and killed a man. Pough moved to suppress his statement on Fifth and Fourteenth Amendment grounds, and the state court held multiple suppression hearings on this issue. Pough testified that he was not actually involved in the murder conspiracy, did not know who shot and killed the victim, and did not drive the getaway vehicle. Instead, Pough claimed that he provided the written statement because the police had promised him immunity and witness protection.

At the conclusion of the suppression hearings, the state court made a factual finding that Pough, without having been Mirandized and without the assistance of counsel, was initially questioned on the street from 2:50 p.m. until 3:30 p.m., then searched and transported to the police station, and then questioned "in a custodial environment" at the police station from approximately 4:15 p.m. to 11:00 p.m. See App. 149-50, 155, 157. Yet, it was not until after 6:54 p.m. that detectives first gave Pough his Miranda warnings. Shortly after he was Mirandized, Pough provided the written statement. See id. at 155. The state court indicated that it was "incredible that no

---

[2] Pough had one prior violation of his supervised release term, which resulted in a sentence of 60 days of home confinement with electronic monitoring. All other conditions of his supervised release term remained in effect.

3

Detective had any notes with regard to this roughly three hour period of interaction [prior to the <u>Miranda</u> warnings] and that no paperwork was generated." <u>Id.</u> at 150. The state court concluded that Pough's written statement was involuntary and "induced by improper promises of leniency that were designed to induce Pough into waiving his constitutional rights and to confess to his involvement in the murders at issue," in violation of the Fifth and Fourteenth Amendments of the United States Constitution. App. 161. Accordingly, the state court suppressed the statement. With the confession excluded, the prosecution withdrew the charges against Pough.

After the state charges were withdrawn, the District Court held two revocation hearings on the violation petition before concluding that Pough had committed the violation. In so finding, the District Court explicitly "rel[ied] <u>solely</u> on Defendant's testimony during the suppression hearing to find a violation."[3] App. 13 (emphasis added). Specifically, the District Court considered Pough's testimony during his cross examination at the December 13, 2013, suppression hearing:

> Q: You've had a chance to look at your statement again since the last hearing, right? Take a look at your confession again?
>
> A: Yes.
>
> Q: And when you mentioned that thing about how you were talking about getting your van back, you said specifically I'll never get that car back, will I; is that right?

---

[3] The District Court indicated that it was not considering Pough's written confession in its analysis. Thus, the District Court did not rule on whether his confession, which the state court deemed an involuntary confession in violation of the Fifth and Fourteenth Amendments, was admissible in a federal revocation proceeding. <u>See</u> App. 13.

A: Yes.

Q: And you knew that you were confessing and implicating the shooters on the homicide, right?

A: Yes.

Q: That you were only the getaway driver. You never even held the gun, right?

A: Never what?

Q: You're the getaway driver only, right? Meaning you didn't shoot the gun that day that killed Damon Stafford, right?

A: Yes.

Q: You identified Hak and New-Man as the shooters, not you, correct?

A: Yes.

****

Q: Just so that we're clear, you're telling Her Honor that you legitimately thought, despite being the driver in a murder for hire, that you were not going to be prosecuted for that?

A. Yes.

App. 138-39.

Based on that testimony, as well as the failure of Pough's attorney to conduct redirect and the failure of Pough to deny "the veracity of his statement," see App. 90-93, the District Court found that Pough had made an incriminating statement, which "clearly established that he was involved as a get-away driver after a murder took place and that this conduct was in violation of the terms of his supervised release." App. 16.

5

Accordingly, the District Court revoked his supervised release.  Although a "dispositional" report" by the United States Probation Office identified the advisory sentencing range as 30-37 months of imprisonment under the United States Sentencing Guidelines (the "Guidelines"), the District Court sentenced Pough to 60 months of imprisonment.  Pough timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final decision of a district court.  A district court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release. . . ."  18 U.S.C. § 3583(e)(3).  We review a district court decision to revoke supervised release for abuse of discretion.  United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008).  Factual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review.  Id.

## III.

Although the parties agree that the District Court could consider Pough's state court testimony for purposes of his revocation proceeding,[4] the parties disagree over

---

[4] "[A] defendant charged with violating a release condition, unlike a defendant charged with violating a statute, does not enjoy the full panoply of rights normally available in a criminal proceeding."  United States v. Loy, 237 F.3d 251, 260 (3d Cir. 2001) (quotation marks omitted).  For example, to safeguard a defendant's right against self-incrimination, a defendant's testimony in support of a motion to suppress evidence may not be used against him at a subsequent trial, see Simmons v. United States, 390 U.S. 377, 393-94

whether the testimony is a judicial admission to be reviewed de novo or a factual finding to be reviewed for clear error. We do not need to resolve this question because we hold that, even under the more deferential clear error standard of review, the District Court erred.

A factual finding is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 574. See also United States v. Stewart, 452 F.3d 266, 273 (3d Cir. 2006) (same).

Based on our review of the limited record that the District Court relied upon, we conclude the District Court committed clear error. The District Court relied "solely" on Pough's testimony during the December 13, 2013, suppression testimony. App. 13. This testimony, however, does not provide the minimum evidentiary support necessary for finding a violation by a preponderance of the evidence. The line of questioning initiated by the prosecutor clearly relates to Pough's written statement. The prosecutor's questions focused on what Pough told police and what Pough understood to be the implications of his confession. See, e.g., App. 138 ("And when you mentioned that thing

_____

(1968), but a defendant has no such right against self-incrimination in a revocation proceeding, see Loy, 237 F.3d at 260.

7

about how you were talking about getting your van back, you <u>said</u> specifically I'll never get that car back, will I; is that right?") (emphases added). After these types of questions, the prosecutor asked, "Just so that we're clear, you're telling Her Honor that you legitimately thought, despite being the driver in a murder for hire, that you were not going to be prosecuted for that?" App. 139. But this question, and similar questions asked by the prosecution, do not provide the minimum evidentiary support necessary for the supervised release violation, when considered in the context of Pough's overall testimony. The clear import of Pough's testimony at the December 13, 2013, hearing is that Pough provided the written statement to police because he believed that, if he were to confess, he would not be prosecuted. Nor does the failure of Pough's attorney to conduct redirect, or Pough's failure to affirmatively deny "the veracity of his statement" change this analysis. Indeed, at an earlier hearing held on October 28, 2013, Pough testified that he did not drive the getaway car, did not know who the shooters were, but had confessed in his written statement because prosecutors offered him immunity. <u>See</u> App. 120.

Thus, we are "left with the definite and firm conviction that a mistake [was] committed" by the District Court when it construed Pough's testimony at the suppression hearing as an incriminating statement. <u>See</u> <u>Anderson</u>, 470 U.S. at 573. Therefore, the District Court's decision revoking supervised release, based solely on Pough's isolated testimony at the state suppression hearing, was inconsistent with the exercise of sound discretion.

8

We will vacate the District Court's judgment and remand for further development of the record. We note that at Pough's revocation hearing, the District Court declined, despite requests by both parties, to develop an independent record of the violation. On remand, the District Court may wish to hear relevant testimony, and it may wish to decide, in the first instance, the admissibility of Pough's written statement in a federal revocation hearing.

Accordingly, we need not reach Pough's second argument on appeal — that his sentence was procedurally unreasonable.[5]

IV.

For the foregoing reasons, we will vacate the District Court's judgment and remand for further proceedings consistent with this opinion.

---

[5] Pough argues that the District Court committed plain error when it did not calculate the advisory Guidelines sentencing range, and failed to provide reasons, pursuant to 18 U.S.C. § 3553(a), for its upward variance. In imposing its sentence, the District Court stated, "[a]nd that given the seriousness of the violation that the sentence is 60 months in custody of the Bureau of Prisons, so I'm going to make that the — impose that sentence." App. 100-01. We need not address this second issue on appeal, as we hold that the District Court committed clear error when it relied solely on Pough's suppression testimony to conclude that Pough violated his supervised release term. But we note that a sentencing court, during a revocation hearing, must consider certain factors enumerated in 18 U.S.C. § 3553(a), pursuant to 18 U.S.C. § 3583(c). See United States v. Clark, 726 F.3d 496, 500-01 (3d Cir. 2013).

9