NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2066
_____

UNITED STATES OF AMERICA

v.

SALVATORE STABILE,
                                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No.  2-08-cr-00145-001, 2-09-cr-00241-001)
District Judge: Honorable Stanley Chesler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2016
_____

Before: JORDAN, HARDIMAN, GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: February 2, 2016)

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Salvatore Stabile seeks remand for resentencing. He argues that upon the revocation of his supervised release, the District Court's imposition of a sentence of 36 months of imprisonment[1] was unreasonable. Specifically, he argues that the "sentence [was] greater than necessary to satisfy the sentencing goals set forth in 18 U.S.C. § 3553(a)" and that the "sentence overstated the seriousness of Stabile's offense and failed to account for his personal circumstances." (Appellant's Opening Br. 10.) For the reasons set forth below, we will affirm.

## I.     Background

In 2009, following a bench trial, the District Court found Stabile guilty of three counts of receiving child pornography and one count of possessing child pornography. He then pled guilty to a single count of bank fraud. Stabile received a sentence of 78 months of imprisonment, followed by five years of supervised release. During his term of incarceration, Stabile worked diligently to improve himself, taking advantage of over twenty different training and educational opportunities. He had a solid work history and had no disciplinary problems.

Upon his release from custody, Stabile almost immediately violated the terms of his supervised release. One of the terms of his supervised release was a restriction on the

---

[1] Although the Government argues that Stabile's characterization of the 36 month term as the statutory maximum is incorrect, we need not reach this issue. The Violation of Supervised Release Report states that the statutory maximum term of imprisonment is 36 months. The only question before us is whether the imposition of 36 months of incarceration is unreasonable. We determine that it is not.

use of a computer. Specifically, Stabile could only use a computer to seek employment or housing. Less than two weeks after his release, he created an account on Match.com, a dating service, and, using a false name ("David Foster Brown") and fictitious identity, contacted his ex-wife, Debbie Deetz. In their lengthy emails, Stabile used information he knew about Deetz to lure her into a relationship. For example, he mentioned her favorite foods and conjured up a fictitious employment background that mirrored her grandfather's business experience.

After engaging in extensive electronic communications, Stabile suggested they meet. Before doing so, Deetz conducted a property search on the home address David Foster Brown (Stabile) had provided to her. She learned that the home he claimed to own in Franklin Lakes, New Jersey was owned by an elderly couple.[2] Her suspicions were piqued based on this discrepancy, so Deetz conducted a reverse phone number check on the cell phone number he had given her. She learned that the phone number belonged to Stabile. Upon discovering this deception, she contacted the police. Ultimately, Stabile was arrested and charged with stalking.

Stabile was charged with violating two conditions of his supervised release – the restriction on computer use and the prohibition on committing a crime. In exchange for his pleading guilty to the computer violation, the Government dismissed the second count.

---

[2] The probation office's subsequent investigation revealed that the house was in an isolated, wooded area.

At sentencing, Stabile sought a sentence at the low end of the Guidelines range of 5 to 11 months, arguing that his efforts at self-improvement during his incarceration demonstrated his rehabilitation. Further, Stabile himself spoke at the sentencing hearing, apologizing for his actions, expressing his regret for his actions and observing that his actions "got blown out of proportion." (App. 47.)

The Government sought a longer sentence, based on Stabile's use of the "computer to re-victimize his ex-wife." (App. 48.) Stabile, according to the Government, did not blithely create the Match.com account, but rather carefully planned out his actions and the creation of his false identity with the intent to lure her to a secluded area where he could potentially do her harm.

Deetz, who had testified as the Government's star witness in Stabile's original trial, testified at the sentencing hearing. She explained the actions she had taken to protect herself in anticipation of Stabile's release. More poignantly, she described how, upon discovering his deception, she "began to physically shake and it just brought back a flood of emotions of all the destruction that Mr. Stabile had caused in [her] life, both emotionally and financially." (App. 52.)

The District Court calculated the Guidelines range, and then considered the factors set forth in 18 U.S.C. §§ 3553(a) and 3583(e). After acknowledging "Stabile was a model prisoner" whose positive conduct during his incarceration supposedly demonstrated Stabile was "somehow rehabilitated," the District Court concluded that Stabile's conduct upon his release "demonstrates that that is simply not the case." (App. 55.) The District

4

Court found that Stabile's actions were designed to retaliate against Deetz. The District Court considered specific evidence in the record, such as Stabile's computer passwords that included the words "betrayed" or "I betrayed" and the "cold and calculated decision to ignore the orders of this Court and to use [his] computer to create a totally fabricated persona in order to inflict emotional harm on [his] ex-wife." (App. 56, 57.)

The District Court specifically found that this behavior required a sentence that would serve a deterrent effect, protect society, and reflect the seriousness of the offense.[3] The District Court imposed a sentence of 36 months incarceration.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

"The District Court's decision to revoke supervised release is reviewed for abuse of discretion. However, the factual findings supporting that decision are reviewed for clear error; legal issues are subject to de novo review." *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008) (internal citation omitted).

## III. Discussion

The record "demonstrate[s] that the sentencing court gave 'meaningful consideration'" to the factors set forth in 18 U.S.C. § 3553(a). *United States v. Bungar*,

---

[3] With respect to the seriousness of the violation, the District Court commented that Stabile's "conduct . . . was designed and intended to retaliate against an individual who testified against him." (App. 53.) The District Court described Stabile's actions as "witness intimidation." (App. 58.)

5

478 F.3d 540, 543 (3d Cir. 2007) (quoting *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006)). As such, we conclude that the District Court did not abuse its discretion in imposing the 36 month sentence. Contrary to Stabile's arguments that the sentence was greater than necessary to satisfy the goals of 18 U.S.C. § 3553(a) and that the "sentence overstated the seriousness of Stabile's offense and failed to account for his personal circumstances," (Appellant's Opening Br. 10), the District Court clearly considered Stabile's positive conduct during his incarceration, but then concluded that those efforts were outweighed by his post-release conduct. As we have previously observed, a district court's failure to give mitigating factors the weight a defendant contends they deserve does not render the sentence unreasonable. *Bungar*, 478 F.3d at 546.

Similarly, Stabile's argument that the District Court failed to "provide any basis for its assumption that Mr. Stabile might have hurt Ms. Deetz if they had met in person" (Appellant's Opening Br. 14) is unavailing. The District Court simply observed that it "cannot rule out the possibility" that Stabile's interactions with and harm to Deetz might have gone beyond the mental harm his actions caused. (App. 56.) Rather than a clear assertion regarding Stabile's intent to physically harm Deetz, this statement simply hypothesizes that the possibility for physical harm existed. Given the statements in the original Presentence Investigation Report that Stabile had threatened Deetz before, support for the District Court's ruminations existed.

Stabile also asserts that the District Court placed undue emphasis on the nature of

his underlying offense rather than the conduct related to the violation. "Sentence is imposed for violations of supervised release primarily to sanction the defendant's breach of trust 'while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'" *Bungar*, 478 F.3d at 544 (quoting *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006)). Given our recognition that sentencing for a violation of supervised release can take into consideration the underlying offense, the District Court's doing so here was not an abuse of discretion.

## IV. Conclusion

Since the District Court thoroughly discussed the factors set forth in 18 U.S.C. § 3553(a), carefully explaining its reasons for imposing a sentence above the Guidelines range, we cannot find that the District Court abused its discretion in imposing a sentence of 36 months. The sentence is not unreasonable. Therefore, we will affirm the District Court's judgment of conviction.